Mark ASADOORIAN et al.

v.

WARWICK SCHOOL COMMITTEE.

Nos. 95–254–M.P., 95–273–M.P.

Supreme Court of Rhode Island.

March 26, 1997.

Robert S. Parker, Richard A. Skolnik, Providence, for Plaintiff.

Rosemary M. Allen, James M. Green, Providence, for Defendant.

**OPINION**

FLANDERS, Justice.

Do absences from work have any effect on whether a probationary school teacher can qualify for tenure? We issued writs of certiorari on these consolidated petitions to decide various issues pertaining to this question. In this case, the appropriate school authorities determined that, by missing at least 27 days during any one or more of their 180–day–long probationary school years, fifteen teachers had failed to attain tenure because they did not satisfy the minimum statutory requirement of completing three full and consecutive years of teaching. In reviewing the legal propriety of this decision, we must also rule on whether the authorization of these absences by the teachers' collective-bargaining agreements and by Rhode Island's Parental and Family Medical Leave Act (Leave Act) [1] affects the resolution of the issues presented. Finally, we must resolve whether the commissioner has jurisdiction to adjudge a civil rights claim brought by the teachers pursuant to 42 U.S.C. § 2000e–2.

All parties have asked us to review a decision of the State Board of Regents for Elementary and Secondary Education (board) that addresses these issues. The board affirmed a decision of Peter McWalters, the Rhode Island Commissioner of Education (commissioner), denying and dismissing an appeal from a ruling of the School Committee of the City of Warwick (school committee) that denied tenure to each of the fifteen probationary teachers, all of whom taught in

1. General Laws 1956 chapter 48 of title 28.

Warwick's public schools.[2] The school committee's ruling upheld the actions of the then-Warwick public schools superintendent, Henry S. Tarlian (superintendent). The sole basis on which the superintendent denied tenure to these teachers was that each had missed "substantial" teaching time during one or more of his or her three consecutive probationary years, thereby preventing the teacher from completing that year of the probationary pretenure period.

Our task on certiorari is to consider whether the commissioner's decision, as affirmed by the board, was supported by any competent evidence and free from any errors of law. For the reasons set forth below, we affirm the decisions of the board and the commissioner in all aspects.

### Facts and Procedural History

In June 1993, shortly after concluding their third nontenured year of service in the Warwick School System, each of the fifteen teachers in this case received a substantially similar letter from the superintendent:

"This June you will complete your third year with the Warwick School System, and you would normally be entitled to tenure with the satisfactory completion of three years of teaching.

"In your case, however, we are persuaded, on the basis of recent rulings by the Commissioner, that denial of tenure is in order because of the substantial time you've missed from school during [one or more of the previous three probationary school years]. We are advising you, there-

fore, that [those school years within which substantial time was missed] * * * will not be counted toward tenure.

"We hope that next year you'll be able to complete the year with substantially fewer absences from your teaching duties."

The superintendent based his denial of tenure upon what he perceived to be the teachers' excessive absences (ranging from 27 to 109 days)[3] in at least one of the three previous probationary school years (each one of which comprises 180 teaching days).[4] However, the parties' collective-bargaining agreement authorized all the absences, and the Leave Act statutorily sanctioned most of them. Moreover, each teacher's performance was such that the school committee renewed his or her annual contract for the 1993–1994 school year.

In reviewing the teachers' individual records of absence, the superintendent determined that those who were absent 15 percent or more of the school year—that is, those who missed twenty-seven or more days—were absent so excessively during that year that it would not count as one of the three consecutive probationary teaching years that each teacher had to complete to obtain tenure (the 27–day rule[5]). The superintendent came to this conclusion after considering the individual reasons for each teacher's absences, conferring with his cabinet of advisors,[6] and reviewing the commissioner's ruling in *Brunetti v. Woonsocket School Committee,* Commissioner of Education (April 24, 1992). In *Brunetti* the commissioner reaffirmed that "a teacher does not become tenured until three full years of service under three

---

**2.** The probationary teachers affected by this ruling include Mark Asadoorian, who is now deceased, Gayle M. Cameron, Barbara Cummings, Amy B. Dolan, Lisa A. Fortier, Lisa Gallo, Janet E. Goes, Nancy R. Hill, Susan Janik, Dori J.D. LaBella, Michael MacKillop, Kristin A. Murray, Susan Sylvester, Sharon A. Rix, and Margo Williams.

**3.** The superintendent testified before the commissioner's hearing officer that the basis of his decision was "[t]he fact that they had a number of absences beyond what we considered sufficient to determine their ability to perform teaching, instruction at certain acceptable levels. In other words, they had certain excessive levels of what we considered beyond reason."

**4.** A school year is 181 days long, which includes 180 days of teaching and one day of orientation.

**5.** We refer to the superintendent's decision as "the 27–day rule" for reference purposes only, without intending to suggest that it was formally adopted as a rule.

**6.** The superintendent explained how he arrived at the number twenty-seven, which is "15 percent of the 180 days that * * * [teachers] are supposed to teach," by stating that "my cabinet and myself * * * sat and discussed this issue and we came up with that number * * * [b]ecause the * * * School Committee at that time had no declared policies or guidelines as to absences and the grant of tenure."

successive annual contracts have been completed." *Id.* at 5 (quoting *Dunn v. Middletown School Committee,* Commissioner of Education (July 26, 1976)). The commissioner then .ruled that probationary school years during which a teacher incurs absences of other than a "brief * * * de minimis nature" [7] are not properly counted toward tenure because those years are not "full." *Id.* at 7. Thus, in adopting the 27–day rule, the superintendent was attempting both to clarify and to define the more general de minimis standard first articulated by the commissioner in *Brunetti.*

The teachers appealed their denial of tenure to the school committee. After a hearing the school committee, itself relying upon *Brunetti,* voted to uphold the superintendent's determination that "when an individual had 27 or more days of absence in a school year, that year would not count as one of three annual successive contract years for tenure purposes." September 21, 1993 Decision of the School Committee of the City of Warwick.

The teachers then appealed their tenure denial to the commissioner, claiming also that the 27–day rule constituted an unlawful employment practice under 42 U.S.C. § 2000e–2 in that it allegedly had a disproportionate impact on women. In a decision written by a hearing officer, the commissioner held that by missing at least 15 percent of class time (or twenty-seven or more days) out of at least one of three probationary school years, none of the teachers had completed "three *full* years of service under * * * [the three] successive annual contracts [each was issued]." *Asadoorian v. Warwick School Committee,* Decision of Commissioner of Education at 6 (August 12, 1994).[8] The commissioner characterized the 27–day rule as a "line drawn" that is "consistent with the notion of a 'full' school year yet permit[ting] brief routine absences of a *de minimis* nature." *Id.*

"[C]onstruction of our statute to require that a teacher be in attendance every sin-gle day of the school year in order for the year to be counted for tenure purposes, while it would provide a definite number of days, would result in a teacher's starting the probationary period anew when he or she was absent a single day during the probationary period. This reading of our statute would be unduly rigid and would produce the irrational result of restricting the class of tenured teachers to those with perfect attendance during the probationary period. .Our interpretation of the statute permits for some flexibility, yet * * * effectuates the legislative objective to require a demonstration of the probationary teachers' ability to give satisfactory service over a sustained and uninterrupted period." *Id.*

The commissioner further held that absences authorized by the Leave Act could be counted in determining whether a teacher had worked a full year for tenure purposes. However, he ruled that such absences could not interrupt the requirement of three successive years of service on the tenure track. *Id.* at 9. Finally, the commissioner declined to decide whether the 27–day rule constituted an unlawful employment practice under 42 U.S.C. § 2000e–2 because that "issue * * * is clearly beyond the jurisdiction of the Commissioner, as it does not arise under a law relating to schools or education." *Id.* at 10.

Thereafter, both the teachers and the school committee appealed the commissioner's decision to the board. The board found that "the Commissioner's findings of fact are supported by the record and that his decision properly applies the law to those facts." Thus, the board affirmed the decision of the commissioner. *Asadoorian v. Warwick School Committee,* Board of Regents for Elementary and Secondary Education (April 27, 1995).

The teachers and the school committee then filed separate petitions for writs of certiorari with this court, seeking review of the board's decision. We granted the petitions and consolidated them for briefing and oral

---

**7.** *Brunetti,* characterized absences that would be brief and of a de minimis nature as "routine, short-term absences" taken "for such reasons as illness, death in the family[,] etc." *Id.* at 7.

**8.** With the exception of Susan Sylvester, whose contract for the 1990–1991 school year was for "one year only."

argument. The teachers argue that they should not have been denied tenure solely because of their asserted excessive absences when those absences were taken pursuant to contract and were sanctioned by the Leave Act—especially when there were no previous written policies, guidelines, rules, or regulations concerning how such absences would affect their quest for tenure. They also contend that it was error for the commissioner not to hear and decide their 42 U.S.C. § 2000e–2 claim. They seek reversal and the quashing of "any portion of any decision rendered inconsistent" with their arguments. The committee, on the other hand, seeks reversal of the board's decision "to the extent that it allows for a break in the three-successive-year requirement * * * and to the extent that it holds prior years of service to be protected benefits" preventing the probationary period from starting anew by teachers who take Leave Act-sanctioned absences.

## Standard of Review on Certiorari

 Our review on a writ of certiorari is restricted to an examination of the record to determine whether any competent evidence supports the decision and whether the decision maker made any errors of law in that ruling. *See D'Ambra v. North Providence School Committee*, 601 A.2d 1370, 1374 (R.I. 1992). Furthermore, we review the board's affirmance of the commissioner's decision only to the extent of verifying that the board limited its review to a determination that the commissioner's decision was not "patently 'arbitrary, discriminatory, or unfair.'" *Id.* at 1375 (quoting *Altman v. School Committee of Scituate*, 115 R.I. 399, 404–05, 347 A.2d 37, 40 (1975)); *see also* G.L.1956 § 16–39–3.

 Preliminarily we note that even though we are "vested with final responsibility for statutory construction," *Gallison v. Bristol School Committee*, 493 A.2d 164, 166 (R.I.1985); *see also D'Ambra*, 601 A.2d at 1374 (it is "'the function and duty of this court to construe statutes'"), "where the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not clearly erroneous or unauthorized." *Gallison*, 493 A.2d at 166.

## Analysis

### I

### The 27–Day Rule

The teachers argue that the superintendent had no authority under the Teachers' Tenure Act (Tenure Act) [9] to apply the 27-day rule. They claim that the rule arbitrarily denies tenure without regard to performance or ability. They also claim that it was "a mere invention" of the superintendent "without any basis in written policies, guidelines, rules or regulations" of the school committee. They further argue that absences that are sanctioned either by the Leave Act or by the parties' collective-bargaining agreement should not be counted in determining whether there were more than de minimis absences in a given probationary year. The school committee, on the other hand, contends that the 27–day rule is the result of a reasonable exercise of discretion that ensures that before tenure occurs, a school will have had an adequate opportunity to observe and to evaluate a teacher's performance.

 In *Corrigan v. Donilon*, 433 A.2d 198 (R.I.1981), we noted that the three-year probationary period set forth in the Tenure Act [10] serves the dual purpose of affording a "school committee and its administrative staff an opportunity to evaluate the probationary teacher, and at the same time it provides the probationer with an opportunity to correct any deficiencies that may arise prior to a determination of the grant of tenure." *Id.* at 200–01. In construing this statute, our task is to effectuate the General

9. General Laws 1956 chapter 13 of title 16.

10. Section 16–13–3(a) of the Tenure Act provides in pertinent part:
"Three (3) successive annual contracts shall be considered evidence of satisfactory teaching and shall constitute a probationary period. Teachers who complete the probationary period shall be considered in continuous service and shall not be subject to annual renewal or nonrenewal of their contracts. No such tenured teacher shall be dismissed except for good and just cause."

Assembly's intent by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning. *See D'Ambra,* 601 A.2d at 1374. As noted above, however, in circumstances in which the terms of a statute are unclear or subject to more than one reasonable construction, the interpretation of the agency charged with enforcing it is entitled to deference if it is not clearly erroneous or unauthorized. *Gallison,* 493 A.2d at 166.

■ Here, the board is endowed with "all the powers * * * usually appertaining to public corporations entrusted with control of elementary and secondary education institutions and functions." General Laws 1956 § 16–60–1(a). It also has the duty "[t]o enforce the provisions of all laws relating to elementary and secondary education," § 16–60–4(9)(vii), and "[t]o decide and determine appeals from decisions of the commissioner," § 16–60–4(9)(viii). Similarly, it is the duty of the commissioner to "interpret school law and to decide such controversies as may be appealed to the commissioner from decisions of local school committees." General Laws 1956 § 16–1–5(10); *see also* § 16–60–6(9)(viii) (duty of commissioner to "supervise * * * interpret[ation] [of] school law"). Furthermore, "school committees have authority to make whatever provisions they deem proper regarding leaves of absence." *Bray v. School Committee of the City of Pawtucket,* Commissioner of Education 4, 6 (August 1963); *see also* G.L.1956 §§ 16–2–9(a), 16–2–18 (the "entire care, control, and management of all * * * public school interests * * * shall be vested in the school committee[ ]").

■ In this case the commissioner, whose duty it is to interpret school law, held that "tenure for public school teachers is conditioned upon completion of three full years of service under three successive annual contracts." *Asadoorian v. Warwick School Committee,* Commissioner of Education at 6. He further determined that a "full" school

year is one in which absences do not exceed 15 percent or more of the possible school days during that year (that is, twenty-seven days). *Id.* Although other interpretations would also be reasonable concerning what number of absences would be deemed so excessive as to prevent that school year from being considered a complete one for evaluation purposes and, therefore, from counting toward tenure, the commissioner's determination does not appear to us to be arbitrary, clearly erroneous, or unauthorized. Moreover, since it is undisputed that each teacher missed no fewer than twenty-seven days during one of their three probationary years, competent evidence existed to support the commissioner's findings. Finally, we believe that the board's affirmation of the commissioner's decision adhered to the appropriate standard of review.

Contrary to the teachers' argument, the 27–day rule is not arbitrary—nor should it have been wholly unexpected. Under the direction of the school committee, the superintendent is charged with "the care and supervision of the public schools," § 16–2–11(a), and with "appoint[ing] all school department personnel," § 16–2–11(a)(7). The commissioner had previously determined in *Brunetti* that probationary years with other than de minimis absences would not qualify as complete years for tenure purposes. It was the superintendent's duty to implement this decision.[11] After conferring with his cabinet, the superintendent concluded that twenty-seven or more days of absence in any given probationary year were excessive and adversely affected a school's ability to determine whether that teacher could perform at acceptable levels. We can discern no legal error with this decision and its subsequent affirmance by the appropriate educational authorities.

Although the 27–day rule evolved out of the process of evaluating these teachers for tenure, it was the result of the superintendent's application of *Brunetti*'s de minimis standard to the fifteen teachers and not the

---

11. At the hearing before the commissioner's hearing officer, the superintendent, in response to a question about what prompted his decision to deny tenure to each of the teachers, replied, "I became aware of the decision that the Commis-

sioner had made in another case [*Brunetti*], which determined that because a teacher had not completed a full year of instruction that that year would not count as tenure."

result of administrative rule making. Moreover, even though the teachers had no advance written notice that absences of twenty-seven days or more would be deemed more than de minimis, the superintendent's application of *Brunetti* here was but the crystallization of the previous education law that a teacher's probationary years must be "full" ones in order to qualify for tenure. Although the school committee did not have its own formal policy regarding absences and the accrual of tenure, the teachers were still on notice that more than de minimis absences during their probationary years would adversely affect their achieving tenure.

The teachers are correct in arguing that the superintendent's decision to deny them tenure was in no way predicated upon subpar performances when they were present in school and teaching. Indeed, each of them was offered another one-year teaching contract. However, the offering of a further annual contract is not the same as satisfying the statutory preconditions for tenure. Completion of a full probationary period is what the law requires as a condition precedent to obtaining tenure.

The commissioner also rejected the teachers' argument that absences sanctioned by the parties' collective-bargaining agreement should not be counted against a teacher's completion of his or her probationary period. His reasoning was that if this proposition were accepted, "parties to a contract [could] * * * reduce the length of the probationary period for nontenured teachers by agreeing that certain absences, no matter how lengthy, were acceptable to the employer. Parties to a collective bargaining agreement cannot nullify the provisions of our state's Teacher Tenure Act * * * by creating an inconsistent contractual provision. * * * The length of the probationary period is a function of state law, [G.L.1956] § 16–13–3 and not of individual contract." *Asadoorian v. Warwick School Committee,* Commissioner of Education at 7. We cannot say that this reasoning is contrary to law. Moreover, as discussed below, nothing in the Leave Act prevents absences taken pursuant to that act from being considered when determining whether a given probationary school year was a full one for tenure purposes.

## II

### The Interplay of the Rhode Island Parental and Family Medical Leave Act and the Teachers' Tenure Act

Although it is not entirely clear from the record exactly which of the teachers' various absences were allowed by and taken in accordance with the Leave Act, it does appear that most of the teachers' absences would fall within its purview. Assuming that most of the teachers' absences were sanctioned by the Leave Act, we still must determine what impact the Leave Act has upon the Tenure Act and the application of the 27–day rule.

The teachers argue that absences authorized by the Leave Act should not affect their entitlement to tenure. Each teacher was in the process of completing a full year of probationary service when he or she was absent for Leave–Act purposes. Therefore, the teachers argue, upon a teacher's return from leave, G.L.1956 § 28–48–3 mandates that the teacher be allowed to complete that probationary school year so that it will be a full one for tenure purposes. The committee argues that the board was correct in affirming the commissioner's decision that school years with absences of twenty-seven or more days, even if pursuant to the Leave Act, are incomplete for tenure purposes. The committee claims error, however, in the board's affirmance of the commissioner's decision that absences sanctioned by the Leave Act do not interrupt the successive nature of a teacher's probationary years. If this three-year-probationary period is interrupted by taking excessive Leave–Act absences in any one probationary year, a teacher would then be required to start his or her three-year-probationary period anew from the first year.

The Leave Act entitles specified employees "to thirteen (13) consecutive work weeks of parental leave or family leave in any two (2) calendar years." Section 28–48–2(a). Furthermore, § 28–48–3(a) provides:

"Every employee who exercises his or her right to parental leave or family leave under this chapter shall, upon the expiration

of that leave, be entitled to be restored by the employer to the position held by the employee when the leave commenced, or to a position with equivalent seniority, status, employment benefits, pay, and other terms and conditions of employment, including fringe benefits and service credits that the employee had been entitled to at the commencement of leave."

Section 28–48–4(a) provides that "[t]he taking of * * * leave pursuant to this chapter shall not result in the loss of any benefit accrued before the date on which the leave commenced." Conversely, § 28–48–4(b) provides that the Leave Act shall not be construed "to entitle any employee who takes * * * leave pursuant to this chapter to any benefit other than benefits to which the employee would have been entitled had he or she not taken the leave."

■ Our first obligation is to construe the Leave Act and the Tenure Act together. "[W]hen apparently inconsistent statutory provisions are questioned, every attempt should be made to construe and apply them so as to avoid the inconsistency and [they] should not be applied literally if to do so would produce patently absurd or unreasonable results." *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987); *see also* G.L.1956 § 43–3–26 ("[w]herever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both"). Moreover, "[i]t is well established that the Legislature is 'presumed to know the state of existing relevant law when it enacts * * * a statute.'" *Smith v. Retirement Board of the Employees' Retirement System of Rhode Island,* 656 A.2d 186, 189 (R.I.1995). Finally, a remedial statute is to be construed liberally.

*See Gustafson & Sons, Inc. v. Walek,* 599 A.2d 730, 732 (R.I.1991).

■ In this case the commissioner reviewed § 28–48–3(a) of the Leave Act and held that a teacher was entitled to have his or her "service credits" restored to that which existed prior to leave.

"For those teachers who had served one or two full years of the probationary period prior to taking a statutorily-protected leave, restoration of 'service credits' would include crediting them with the year(s) of the probationary period they had already completed. * * * [R]equiring them to begin the probationary period anew would result in the loss of a benefit which *had* accrued to them—the benefit of completion of a portion of the probationary period under 16–13–3." *Asadoorian v. Warwick School Committee,* Commissioner of Education at 9.

The Leave Act limits the restoration of "seniority, status, employment benefits, pay, and other terms and conditions of employment, including fringe benefits and service credits" to those which the employee "had been entitled to at the commencement of leave." Section § 28–48–3(a). Similarly, § 28–48–4(a) prohibits only the loss of those benefits that were "accrued before the date on which the leave commenced." Read together, these sections indicate that absences pursuant to the Leave Act are not to be counted toward the accrual of benefits or service credits or, by implication, toward tenure. After reviewing the relevant statutes independently and giving the commissioner's interpretation the deference it is due, we do not believe the commissioner's decision was clearly erroneous or unauthorized.[12] Construing the remedial Leave Act liberally, we believe that the successive-years requirement of the Tenure Act must be subordinated to the retroactive provisions of the Leave Act. To apply the

---

12. Recently the United States District Court for the District of Rhode Island held that employees were limited to equitable relief under the Leave Act. *Reid v. Citizens Savings Bank/Citizens Trust Co.,* 887 F.Supp. 43 (D.R.I.1995). In reaching this conclusion, the court observed that

"upon the expiration of leave the employee is 'entitled to be restored' to the pre-leave position. The plain and ordinary meaning of the

word 'restore' is 'to bring back into existence * * * to bring back to a former, more desirable condition; * * * to put back; return, as to a former place, position, or rank.' Random House Webster's College Dictionary 1148 (1992). The General Assembly specifically provided that the employee be returned to the *status quo ante.*" 887 F.Supp. at 47.

successive-years-requirement language literally would result in probationary teachers losing their completed years of probationary service—the very status quo ante protection afforded by the Leave Act. Furthermore, we believe that the commissioner's decision also satisfies the language of § 28–48–3(a) of the Leave Act. This section provides that upon the expiration of leave the employee is "entitled to be restored by the employer to the position held by the employee when the leave commenced." Prior to the taking of Leave-Act sanctioned absences, all teachers were on probation and had served one or two full probationary years. Upon their return, they were still in this same position under the commissioner's interpretation.

Therefore, absences in excess of twenty-seven days, even if sanctioned by the Leave Act, prevent the years in which those absences are incurred from counting toward the Tenure Act's three-probationary-years requirement. However, because the Leave Act mandates that employees be restored to the status quo ante before their leave taking and that they not forfeit benefits or service credits earned prior to leave, absences taken pursuant to the Leave Act do not result in a restarting of the probationary period. Rather, any completed probationary years will be applied toward the teacher's satisfaction of the three-year probationary service requirement of the Tenure Act. *See Ciallella v. School Committee of the Town of North Kingstown,* Commissioner of Education 124, 125 (May 1970) (construing § 16–13–7 such that "appellant, having completed one full year of teaching in the North Kingstown School Department prior to his [being absent for two years because of his] induction into the armed forces, must complete only two more years of teaching in that community to acquire tenure"); *see also Solomon v. School Committee of Boston,* 395 Mass. 12, 478 N.E.2d 137, 141 (1985) ("a teacher by taking maternity leave * * * does not interrupt the consecutiveness of her service except as to the period of time consumed by the leave"). Finally, we believe that the board also adhered to the appropriate standard of review in affirming the commissioner's decision.

## III

## The Commissioner's Jurisdiction to Determine Whether the 27–Day Rule Violated 42 U.S.C. § 2000e–2

The commissioner decided that "[w]hether or not the 27–day rule * * * constitutes an unlawful employment practice under [42 U.S.C. § 2000e–2] is an issue which is clearly beyond the jurisdiction of the Commissioner, as it does not arise under a law relating to schools or education." *Asadoorian v. Warwick School Committee,* Commissioner of Education at 10. The board affirmed this finding. The teachers argue that the board erred in this ruling because 42 U.S.C. § 2000e–2 "specifically relate[s] to educational institutions." The school committee argues that the commissioner has no jurisdiction over such claims.

■ It is the duty of the commissioner to "interpret school law and to decide such controversies as may be appealed to him or her from decisions of local school committees." Section 16–60–6(9)(viii); *see also* § 16–1–5(10). Moreover, "[a]ny person aggrieved by any decision or doings of any school committee or in any other matter *arising under any law relating to schools or education* may appeal to the commissioner * * * who * * * shall examine and decide the appeal." General Laws 1956 § 16–39–2. (Emphasis added.) *See generally School Committee of Providence v. Board of Regents for Education,* 429 A.2d 1297, 1300–01 (R.I.1981) (discussing jurisdiction of commissioner pursuant to § 16–39–2). "Appeals to the Commissioner were established on the theory that he or she possessed a level of expertise which should be brought to bear on educational issues." *In re John A.W. Doe,* Commissioner of Education 3 (April 12, 1994) (quoting *LaPierre v. Cranston School Committee,* Board of Regents for Elementary and Secondary Education (May 11, 1989)).

■ The question then is whether a civil rights claim brought pursuant to 42 U.S.C. § 2000e–2 is a "matter arising under any law relating to schools or education." As noted above, the teachers argue that 42 U.S.C. § 2000e–2 "specifically relate[s] to educational institutions." However, even though it is true that the protections afforded by 42 U.S.C. § 2000e–2 *apply* to educational insti-

tutions,[13] that statute lacks that particular "relation" to schools or education without which the commissioner is powerless to examine and decide the matter. *See Sousa v. School One,* Commissioner of Education 5 (January 27, 1993) (notwithstanding that the federal Family Educational Rights and Privacy Act applied to the school in question, the commissioner had no jurisdiction since "the action complained of * * * does not violate a law relating to schools or education over which the Commissioner exercises enforcement authority"). Moreover, simply because a matter involves a teacher and a school committee does not mean that the dispute arises under school law. Many statutes apply to educational institutions but lack the particular relation with schools or education that will bring them within the scope of the commissioner's jurisdiction. We are of the opinion that 42 U.S.C. § 2000e–2 is one of those statutes. *See Laidlaw Transit, Inc. v. South Kingstown School Committee,* Commissioner of Education 4 (April 6, 1992) ("dis-

pute does not 'arise under' a law relating to schools or education * * * [when] it does not require construction or application of an educational statute"). Because we believe that this is a correct interpretation of the law, we affirm the board's ruling that the commissioner lacked jurisdiction to adjudicate the teachers' civil rights claims.

## Conclusion

For these reasons the parties' petitions for certiorari are denied, the writs previously issued are quashed, and the decision of the board is affirmed. The record in this case shall be remanded to the board with our decision endorsed thereon.

13. *See* Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, § 3, 86 Stat. 103, 104 (1972) (amending § 702 of the Civil Rights Act of 1964, as enacted at 42 U.S.C. § 2000e–1, to remove the exemption of educational-institution employees—primarily teachers—from equal-employment requirements); *see also* Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 1972 U.S.C.C.A.N. (86 Stat. 103) 122, 2154–55.