Alice A. SCHRAM et al.

v.

BURRILLVILLE CHEVROLET, INC. d.b.a. Burrillville Chevrolet · Geo.

No. 98–193–Appeal.

Supreme Court of Rhode Island.

April 29, 1999.

**458**

Robert W. Smith, Providence, for Plaintiff.

Thomas Romano, Fall River, MA, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

1. *See* Consumer Enforcement of Motor Vehicle Warranties, G.L.1956 *chapter 5.2 of title 31*

## OPINION

PER CURIAM.

Was a motor-vehicle dealer that leased an allegedly defective sport-utility vehicle (SUV) to two consumer lessees properly dismissed from the lessees' Lemon Law [1] action against the manufacturer of the SUV? For the reasons explained below, we answer this question in the negative and therefore vacate the Superior Court's judgment dismissing the dealer from this lawsuit.

The plaintiffs, Alice A. Schram and James M. Schram, were the consumer lessees of an allegedly defective SUV. They appeal from a Superior Court judgment that entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The judgment dismissed their complaint against the defendant, Burrillville Chevrolet, Inc. d.b.a. Burrillville Chevrolet · Geo (dealer). We ordered the parties to show cause why we should not resolve this appeal summarily. After reviewing their respective submissions and listening to their oral arguments, we conclude no such cause has been shown and that we can decide the appeal without any further briefing and argument.

On May 9, 1996, plaintiffs leased a new 1996 Chevrolet Blazer from the dealer, an authorized representative of the vehicle's manufacturer, defendant General Motors Corporation (GMC). On four or more occasions, plaintiffs brought their new SUV to the dealer for repairs due to excessive oil consumption. Claiming that the dealer failed to solve the SUV's oil problem, plaintiffs filed a complaint against the dealer and GMC pursuant to G.L.1956 §§ 31–5.2–2, –3, and –5 of the Lemon Law and the Deceptive Trade Practices Act, G.L.1956 chapter 13.1 of title 6. Thereafter, the dealer filed a motion to dismiss plaintiffs' complaint arguing that, as a matter of law, the court could not find it liable under the above-referenced statutory provisions. The dealer argued that its only obligation under the Lemon Law was to make the repairs necessary to conform the vehicle to the applicable warranties and that

(Lemon Law).

only the SUV's manufacturer—not the dealer—was subject to liability under these statutes.

A Superior Court motion justice granted defendant's motion and entered judgment thereon. On appeal, plaintiffs contend that the motion justice erred in granting defendant's motion, arguing that the ruling, in effect, "requires a consumer to return the non-conforming vehicle to the manufacturer." Because GMC has denied that it was a foreign corporation licensed to do business in Rhode Island, plaintiffs claim that if we uphold this ruling, GMC will require them to return the vehicle to its plant in Detroit, Michigan, or to some other inconvenient place where GMC is doing business rather than to the dealer from which they leased the SUV. The plaintiffs suggest that such an interpretation of the Lemon Law, if allowed to stand, would severely undercut one of the purposes of this law—namely, to provide an expeditious and reasonable remedy to consumers. The crux of plaintiffs' appeal asks us to determine whether the Lemon Law allows motor-vehicle buyers and lessees to sue the dealer from which they bought or leased the allegedly defective vehicle, or whether their cause of action in this respect is solely against the manufacturer. In their amended complaint, plaintiffs allege that both the dealer and GMC violated the Lemon Law and the Deceptive Trade Practices Act by failing to repair the SUV in conformity to the warranties, by refusing to accept return of their SUV, and by failing to refund the trade-in allowance and other expenses they incurred during the term of their lease.

The issue raised by plaintiffs requires this Court to interpret the applicable provisions of the Lemon Law. In construing a statute, we endeavor to determine and effectuate the Legislature's intent when it enacted this law. *See C & J Jewelry Co. v. Department of Employment and Training, Board of Review,* 702 A.2d 384, 385 (R.I. 1997). We ascertain the intent of the Legislature "by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning." *Id.* (quoting *Asadoorian v. Warwick School Committee,* 691 A.2d 573, 578

(R.I.1997)). However, we have stated repeatedly that we will not construe a statute literally if to do so would lead to an absurd result or defeat its underlying purpose. *See Providence Journal Co. v. Rodgers,* 711 A.2d 1131, 1134 (R.I.1998).

The relevant sections of the Lemon Law are as follows. Section 31–5.2–2 outlines the manufacturers' obligations to fulfill warranties. It states:

"If a motor vehicle does not conform to any applicable express or implied warranties, including, but not limited to, the implied warranty of merchantability as defined in § 6A–2–314 and the implied warranty of fitness for a particular purpose as defined in § 6A–2–315, and the consumer or lessee reports the nonconformity to the manufacturer of the vehicle, its agent, or its authorized dealer or lessor during the term of protection, the manufacturer, its agent or its authorized dealer shall effect such repairs as are necessary to conform the vehicle to the warranty, notwithstanding the fact that those repairs are made after the expiration of the term."

Thus, the Lemon Law allows the consumer/buyer or lessee of the allegedly defective vehicle to notify either the dealer or the manufacturer of any alleged problems with the vehicle, whereupon the statute requires one of them to undertake the repairs necessary to conform the vehicle to the warranties. Section 31–5.2–3 then addresses the replacement of nonconforming vehicles. Section 31–5.2–3 provides, in pertinent part:

"If the manufacturer, its agent, or its authorized dealer or lessor does not conform the motor vehicle to any applicable express or implied warranty by curing any nonconformity after a reasonable number of attempts, *the manufacturer shall accept return of the vehicle from the consumer or lessee and, at the consumer's or lessee's option, refund the full contract price or lease price of the vehicle including all credits and allowances for any trade-in vehicle, less a reasonable allowance for use, or replace it with a comparable new motor vehicle in good working order.* A manufacturer replacing a motor vehicle

shall have thirty (30) calendar days from the date of return of the motor vehicle under the provisions of this chapter to deliver a comparable motor vehicle. If, within that thirty (30) days, no comparable motor vehicle has been delivered, the manufacturer shall refund the full contract price or lease price less a reasonable allowance for use. In instances in which a vehicle is replaced by a manufacturer under the provisions of this chapter, the manufacturer shall reimburse the consumer or lessee for any fees for the transfer of registration or any sales tax incurred by the consumer or lessee as a result of that replacement." (Emphasis added.)

The dealer contends that as an authorized representative of GMC, it had an obligation to make the necessary repairs to bring the vehicle into conformance with the applicable warranties under § 31–5.2–2, a duty which it claims to have fulfilled in this case. However, the dealer contends that § 31–5.2–3 imposes liability for any such nonconformance solely on the manufacturer, but not on the dealer. In ruling that the statute only imposes liability upon manufacturers, the motion justice stated:

"[T]he intent of the statute, in this Court's opinion, is that consumers should be entitled to receive compensation from those people who manufacture vehicles.

" * * *

"Certainly, if * * * [it] is alleged that Burrillville altered the vehicle in some respects, that by its alteration caused the vehicle to be subject to the Lemon Law, then, arguably, Burrillville Chevrolet would be a manufacturer as defined under the statute.

"But based upon the allegations here, Burrillville Chevrolet is nothing more than a conduit by which the vehicle was sold to the plaintiff in this matter. And under the statute, they have no liability to the manufacturer of the vehicle."

■ We are of the opinion that to construe the language contained in § 31–5.2–3 as requiring the consumer to return a nonconforming vehicle solely to the manufacturer at its place of business and not to an authorized dealer of the manufacturer located in this state would violate the Legislature's intent and effectuate an absurd result. In the case of foreign manufacturers, consumers might have to return the vehicle to Japan, Germany, or even Yugoslavia (in the case of Yugos), depending on the location of the manufacturer. By obliging the manufacturer to refund the purchase price or replace the defective vehicle with a conforming one, the statute clearly places liability for a nonconforming vehicle on the vehicle's manufacturer. But the statute does not indicate how, where, or by what means the manufacturer shall accept return of the vehicle. Indeed, it would be most peculiar for the law to allow the dealer as the manufacturer's agent to repair the vehicle and conform it to the warranty, but not to permit the consumer to return the nonconforming vehicle to the dealer which sold or leased the vehicle to the consumer and which unsuccessfully attempted to conform it to the manufacturer's warranties. While the dealer may have no liability to refund the purchase price or to replace the nonconforming vehicle, it still can serve as a conduit or agent for the buyer/lessee's return of the vehicle to the manufacturer and for the manufacturer's replacement of the vehicle or refund of the purchase price. Such a construction does no violence to the language of the statute imposing the replacement or refund obligation solely on the manufacturer. Moreover, if the dealer could have and should have cured the nonconforming vehicle by properly performing repairs to it, then the dealer may be liable in any event for failing to fulfill its legal obligations under the Lemon Law.

■ Therefore, the trial court should not dismiss the dealer from any lawsuit based upon the Lemon Law on the mere grounds that, as a matter of law, it cannot find the dealer liable for refunding the purchase price or replacing the nonconforming vehicle. Whether the dealer has properly attempted to perform the requisite repairs and whether it is responsible for failing to cure any repairable defects frequently will be an issue in Lemon Law disputes. Indeed, the dealer's inability to cure the alleged defects is a predicate under the Lemon Law to any return of the vehicle or refund of the purchase price.

Whether any given plaintiff has satisfied this element of the claim and whether the dealer has attempted in good faith to cure the problem may well be material issues in dispute, and such issues must be resolved vis-à-vis the manufacturer's putative liability before deciding whether a replacement vehicle or a refund of the purchase price is an appropriate remedy. Moreover, as the manufacturer's authorized agent and representative within this state, the dealer, as a practical matter, *is* the manufacturer for purposes of securing the manufacturer's compliance with the Lemon Law as far as consumers are concerned. Typically, the dealer also will be at least a necessary party to any relief that these laws may afford. *See* Super. R. Civ. Proc. 19 (Joinder of persons needed for just adjudication). For example, any refund or replacement of a vehicle that the manufacturer may be ordered to furnish usually will require a local dealer to perform the requisite delivery and/or other services that would be necessary to provide the plaintiffs with such relief.

For the reasons stated herein, we sustain the plaintiffs' appeal, vacate the Superior Court's judgment, reinstate the dealer as a party to this action, and remand the papers in this case for further proceedings.