DECISION
Before this Court is an appeal brought by Middletown Main, LLC (the Applicant or Appellant) from a July 22, 2003 decision by the Zoning Board of Review for the Town of Middletown (the Board). The Appellant contends that the Board erred in denying its Application for a dimensional variance to increase the store signage of its shopping center. Jurisdiction in this Court is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The Appellant owns property located on West Main Road in Middletown, Rhode Island, and described as Lot No. 707 on Tax Assessors Plat No. 112. See Addendum of Facts to the Variance Application. At the time, the Appellant was in the process of constructing the Middletown Square Shopping Center. See
Addendum of Facts to the Variance Application; see also
Hearing Transcript of May 27, 2003 at 2.[1] The single building is setback from the street by 380 feet (Tr. I at 11), and consists of five separate stores: Michael's Arts and Crafts, Linens-N-Things, PetCo, and Barnes and Noble.[2] Id. at 4.
The Zoning Ordinance for the Town of Middletown (the Ordinance) regulates the size and placement of signs in the town. It permits each shopping center to display only one "plaza sign," as well as a "wall mounted sign" for each use within the complex. The Appellant chose not to display a plaza sign.[3] Tr. I at 9. Instead, it opted to display only wall-mounted signs for the individual stores in the shopping center. Id. In its Application for a dimensional variance, the Appellant sought "permission to install five wall signs of 160.88 sq.ft., 159.39 sq.ft., 135.37 sq.ft., 223.7 sq.ft. and 157.5 sq.ft. where a maximum of 70 square feet per sign is permitted." At the hearing, counsel for the Appellant argued that the permissible signage is inadequate because the signs are insufficiently visible due to the considerable setback from the street. Tr. I at 10.
On May 27, 2003, the Zoning Board held an advertised hearing on the Application. Additional hearings were conducted on June 10, 2003, and June 24, 2003. At the hearing, the Appellant presented Richard B. Crawford as an expert witness on the issue of signs. Tr. II at 33-36. Mr. Crawford testified that due to the distance between the shopping center and the street, the signs are visible only in the peripheral vision of motorists and that for safety reasons, motorists only have a maximum of two and one-half seconds glance at them. Id. at 49 and 60. He further testified that the two most important considerations for the placement of signs are "sign visibility" and "sign legibility," and that to be legible, the letters in this shopping center signs should be sixty inches high. Id. at 57 and 60.[4] He then stated that application of the Ordinance's sign requirements would cause a hardship because the letters would not be legible from the street. Id. Mr. Crawford said that he based his conclusions on tests that he performed using objective research. Id. at 41, 59-61.
Counsel for the Appellant stated that the Appellant was not seeking permission to have wall-mounted signs with letters that are sixty 60 inches high; instead, it was seeking permission to display signs with letters of only 54 inches in height. Tr. III at 7. He also stated that in return for the dimensional variance, the Appellant would be willing to allow the Board to insert a condition prohibiting the property from ever having a plaza sign. Tr. II at 70-71; Tr. III at 2.
At the conclusion of the hearing, the Board denied the Application by unanimous vote. A formal Decision was recorded on July 23, 2003, and the Appellant timely appealed the Decision to this Court. For the reasons set forth below, the Appellant's appeal is denied.
 Standard of Review
The Superior Court's review of a zoning board decision is governed by § 45-24-69(d). Section 45-24-69(d) provides:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241,245, 405 A.2d 1167, 1170 (1979). The term "substantial evidence" has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance."Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. George ShermanSand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981)). In conducting its review, the trial justice "may `not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact.'" Curran v. ChurchCommunity Housing Corp., 672 A.2d 453, 454 (R.I. 1996) (quoting G.L. 1956 § 45-24-69(d)).
 Analysis
The Appellant raises two issues on appeal. It first contends that the Board misconstrued the Ordinance in finding that it limits the size of its wall-mounted signs to 70 square feet in dimension where, as a matter of right, the Appellant actually is entitled to display signs of 140 square foot. It next posits that the Board erred in denying its Application for a dimensional variance from what it now claims it was entitled to display; namely, 140 square foot signs, because it asserts that the undisputed evidence demonstrated that the hardship resulting from the illegibility of signs that are 70 square feet amounted to more than a mere inconvenience.
A. The Zoning Ordinance for the Town of Middletown
This case concerns the interpretation of the sign provisions of the applicable Ordinance. The Appellant contends that, when read as a whole, the Ordinance permits one to automatically "bump up" the square footage of its signs from 70 square feet to 140 square feet. The Board disputes this interpretation.
Article 12 of the Ordinance contains a comprehensive scheme regulating the time, place, and manner in which signs shall be displayed in the town. Its stated purpose is
 "A. To promote the safety, comfort, and well-being of those who use the Town's streets, roads, and highways;
 B. To reduce distractions and obstructions from signs adversely affecting traffic safety, and to alleviate hazards caused by signs projecting over or encroaching upon public ways;
 C. To discourage excessive visual competition in signage and to ensure that signs aid orientation and adequately identify uses and activities to the public; and
 D. To preserve or enhance town character by requiring new and replacement signs which are (1) compatible with the surroundings; (2) appropriate to the activities, goods or services they promote; and (3) appropriately sized in their context." Zoning Ordinance for the Town of Middletown, Art. 12 § 1200 (2000).
It is undisputed that the property at issue in this case is a shopping center. Section 1201(18) of the Zoning Ordinance for the Town of Middletown defines a "shopping center" as:
 "[a] grouping of three or more commercial establishments primarily retail in nature, planned, developed and managed as a unit, located on a single lot or contiguous lots with off-street parking provided on the lot; or any single commercial establishment planned, developed and/or managed as a unit and containing 20,000 square feet or more Gross Leasable [sic] Floor Area (GFA) within a single building or complex of buildings on a single lot or contiguous lots. A shopping center may be developed either for rental of individual units or for sale of condominium units or a combination of both."
The types of signs at issue in this case are "wall-mounted signs" and "plaza signs." A wall-mounted sign is defined as "[a] sign erected against, displayed upon or attached parallel to the wall of any structure or to a fence, screen or freestanding wall." Id. at § 1201(22). A plaza sign is defined as "[a] group of signs clustered together in a single structure or compositional unit used to advertise multiple occupants of the same building or building complex." Id. at § 1201(14).
Section 1204(L) of the Ordinance sets out the design standards for each type of permitted sign. It specifically provides that shopping centers
 "may display one (1) wall-mounted sign for each use in the shopping center. The size of such signs shall not exceed one (1) square foot in area for each lineal foot of the wall of the portion of the building containing the individual use and on which the sign is located, to a maximum of seventy (70) square feet per sign. Shopping centers may also display one (1) plaza sign, subject to the requirements of Section 1204, J."
Section 1204(M)(4) provides that [f]or buildings located more than 100 feet from a public way, the maximum area for wall-mounted signs is increased by one square foot for every four feet of building set back beyond 100 feet."
The Appellant contends that since it waived its right to construct a plaza sign, Sections 1204(L) and (M), supra, should be read together. According to the Appellant, § 1204(M)(4) permits it to increase its maximum area by one square foot for every four feet its building is set back beyond 100 feet from the street. It maintains that while § 1204(L) generally limits wall-mounted signs to 70 square feet in dimension, in this case, it is entitled to an additional 70 square feet per sign because of the shopping center's 380 foot setback. See § 1204(M)(4).[5] The Appellant contends that because one of the proposed signs is less than 140 square feet, it only needs a dimensional variance for four of the proposed signs.[6] It further maintains that since the Board erred in applying the Ordinance, the variance should be granted.
This Court finds that not only was this statutory issue not raised below, it was repeatedly and deliberately waived by the Appellant during the proceedings before the Board.[7] SeeUnion Station Associates v. Rossi, 862 A.2d 185, 192 (R.I. 2004) ("According to our well settled `raise or waive rule,' a litigant must make a timely and appropriate objection during the lower court proceedings before this Court will indulge the issue on appeal.") (quoting State v. Grant, 840 A.2d 541, 546 (R.I. 2004)). Furthermore, even if the Appellant had not waived the issue, it would not have prevailed on this statutory interpretation claim.
B. Statutory Interpretation
This Court reviews issues of statutory interpretation denovo. See Palazzolo v. State ex rel. Tavares, 746 A.2d 707,711 (R.I. 2000). It is well settled that "the rules of statutory interpretation apply equally to the construction of an ordinance." Mongony v. Bevilaqua, 432 A.2d 661, 663 (R.I. 1981). Where the language of a statute or ordinance "is clear on its face, then the plain meaning of the statute [or ordinance] must be given effect and this Court should not look elsewhere to discern the legislative intent." Ret. Bd. of Employees' Ret.Sys. v. DiPrete, 845 A.2d 270, 297 (R.I. 2004) (internal quotations omitted). However, when statutory provisions are unclear or ambiguous, this Court examines the statute in its entirety. In re Advisory to the Governor, 668 A.2d 1246, 1248
(R.I. 1996).
When faced with an apparent conflict between provisions in an ordinance, this Court looks to the Legislature for guidance. General Laws 1956 § 43-3-26 provides:
 "Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision."
It is clear from this statute that the "preference is for the court to construe the [ordinance provisions] so that both may be given effect." Park v. Ford Motor Co., 844 A.2d 687, 694 (R.I. 2004) (quoting Rhode Island Higher Education AssistanceAuthority v. Rhode Island Conflict of Interest Commission,505 A.2d 427, 430 (R.I. 1986)). In doing so, "every attempt should be made to construe and apply them so as to avoid the inconsistency. . . ." Asadoorian v. Warwick School Committee,691 A.2d 573, 580 (R.I. 1997).
Article 16, Section 1600 of the Middletown Zoning Ordinance regulates shopping centers. Its purpose "is to regulate the effective and timely development of land for commercial purposes in accordance with the objectives and policies of the Middletown Comprehensive Community Plan. . . ." In order to build a shopping center, an owner first must obtain a special use permit. Id. at § 1601. The application for a special use permit must include the "[l]ocation, size, height and orientation of all signs. Id. at § 1602(D).
As previously stated, Article 12 regulates the Town's signs. Section 1204(M) regulates wall-mounted signs. It provides that "[t]he maximum area for all wall-mounted signs . . . is E. [sic] square feet . . . to a maximum of thirty-two (32) square feet." Id. at 1204(M)(3) (emphasis added). This clearly is a general provision as it regulates "all wall-mounted signs."
Section 1204(L) specifically governs the placement of shopping center signs. It permits a shopping center to exceed the 32 square foot maximum size for a wall-mounted sign as mandated by § 1204(M). In particular, it states that shopping center signs "shall not exceed one square foot in area of the wall . . . upto a maximum of seventy (70) square feet per sign." Id. at 1204(L) (emphasis added). This language is mandatory and leaves no room for interpretation. The fact that the same section provides that "[s]hopping centers may also display one (1) plaza sign subject to the requirements of Section 1204, J" demonstrates that the Town Council for the Town of Middletown certainly was capable of distinguishing between mandatory and permissive language.[8] Id. Considering that § 1204(L) specifically mandates that wall-mounted signs for shopping centers may not exceed 70 square feet, this Court finds it inconceivable that the permissive language found in § 1204(M)(4) (supra) applies to shopping centers.[9] Consequently, even had the Appellant not waived this issue before the Board, this Court concludes that the Appellant's interpretation of the Ordinance was without merit and that the Board's decision was not in violation of ordinance provisions.
C. The Dimensional Variance
The Appellant next contends that the Board erred in denying its application for a dimensional variance. It maintains that the undisputed testimony revealed that wall-mounted signs of 70 square feet are not be legible from the street and that this situation amounts to a hardship of more than a mere inconvenience.[10]
In order to obtain a dimensional variance, an Applicant must meet certain requirements. Those requirements are listed in §45-24-41(c) and (d) and in the analogous provisions contained in Section 904 of the Zoning Ordinance for the Town of Middletown. Section 45-24-41 of the General Laws provides in pertinent part:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 "(d) The zoning board of review shall, in addition to the above standards, require that evidence is entered into the record of the proceedings showing that: . . . [i]n granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief."
It is undisputed, however, that the burden of proof remains at all times with an Applicant. See Lischio v. Zoning Bd. ofReview of Town of North Kingstown, 818 A.2d 685, 693 (R.I. 2003) ("When seeking a dimensional variance, an applicant bears the burden of demonstrating to the satisfaction of the zoning board that there is evidentiary support for the proposition that there are no reasonable alternatives that allow the applicant to enjoy a legally permitted beneficial use of his or her property.");Bernuth v. Zoning Bd. of Review of Town of New Shoreham,770 A.2d 396, 401 (R.I. 2001) (stating that "an applicant seeking a dimensional variance has the burden before the zoning board of showing that a factual basis appears in the record to support the proposition that there is `no other reasonable alternative' that would allow the applicant to enjoy a legally permitted beneficial use of the property").
In its well-reasoned Decision, the Board observed that counsel for the Applicant "noted that the [Applicant] was entitled by right to a 75 square foot [plaza] sign near the street with all the tenants named thereon and five wall mounted signs on the building, each limited to maximum of 70 square feet." Decision at 1. It further observed that the Applicant "was willing to waive its right to install [plaza] sign and utilize only the wall mounted signs, on the condition the variances were granted for larger wall mounted signs than allowed by right under the ordinance." Id.
The Board found that "credible evidence had not been submitted to establish that anything other than a self imposed hardship existed." Id. at 2. Specifically, the Board found:
 "the [Applicant] had established the location of the building and placed it a considerable distance back from the roadway. The testimony was insufficient to establish that any traffic hazard or difficulty would be caused by conforming to the sign ordinance and utilizing a [plaza] sign near the roadway to alert motorists to the presence of the plaza. . . . the primary reason the [Applicant] sought the variance was greater financial gain and that the provision for a [plaza] sign negated any perceived hardship arising from the considerable setback from the roadway." The Board then unanimously denied the requested relief after concluding "that the relief requested was not necessary and that denial of the relief requested would not result in more than a mere inconvenience to [the Applicant]." Id.
Mindful that a court cannot substitute its judgment for that of a board with respect to the weight of the evidence on questions of fact, this Court finds that substantial evidence exists in the record to support the Board's findings. The Appellant chose to build its shopping center 380 feet back from the street and then volunteered not to display a plaza sign. Assuming that wall-mounted signs of 70 square feet indeed are not legible from the street, a plaza sign would serve to rectify the alleged hardship. Consequently, this Court concludes that the Board was not clearly erroneous in finding that the Appellant created its own hardship and in denying the variance.
 Conclusion
After a review of the entire record, this Court finds that the Board's denial of the dimensional variance was not in violation of statutory and ordinance provisions, was not in excess of the authority granted to the Zoning Board, and was not arbitrary and capricious. The Board's decision also was not affected by error of law and was not characterized by an abuse of discretion. Substantial rights of the Appellant have not been prejudiced. Accordingly, this Court affirms the Board's decision.
Counsel shall submit an appropriate order consistent with this opinion.
[1] The Board conducted hearings on the Application on three separate occasions: namely, May 27, 2003; June 10, 2003; and June 24, 2003. The transcripts from those hearings will be referred to as Tr. I, Tr. II, and Tr. III, respectively.
[2] At the time of the hearing, the Appellant had not yet succeeded in leasing out the fifth store. Tr. I at 4.
[3] While Counsel for the Appellant made reference to "pylon signs" in his arguments before the Board, it is clear to this Court that he was in fact referring to "plaza signs."
[4] It appears that the Middletown Zoning Ordinance permits the Appellant's signs to have letters that are only 36 inches in height. Tr. III at 7.
[5] According to the Appellant's reasoning, the 380 feet distance from the road less the 100 foot ordinance minimum leaves 280 feet of which, for every four feet, the signs can be increased 1 square foot (380-100=280 ÷ 4 = 70).
[6] Appellant argues that the requested dimensional variance consists of 20.88 sq. ft, 19.39 sq. ft, 83.7 sq. ft, and 17.5 sq. ft., for the proposed signs.
[7] See Tr. I at 18 (noting that the Building Inspector rejected the notion that 1204(M)(4) applied to this case, counsel for the Appellant stated: "Well, I'm not going to argue with his approach and with his philosophy"); Tr. I at 28 ("I don't want to fight [the Building Inspector] on it at this point, I don't want to be the test case."); Tr. II at 15 ("Yeah — and I'm not before you tonight saying that the application of 120-M [sic], 4 must be taken into consideration with this application."); Tr. II at 16 ("And that's what we hope to establish, not that Section 1204M-4 applies to us and we're entitled to a bump-up. . . ."); Tr. II at 20 ("And I only used Section 1204M-4 as an example of how we, kind of, are trying to achieve a bump-up using the philosophy, if you will, that was contained in that section, and I certainly don't want the Board to think that I'm telling you all that we're entitled to that bump-up."); Tr. II at 21-22 ("Well, I would suggest that whatever we discussed on Section 1204M-4, you can put out of your minds because I'm not asking for any relief from that.").
Despite defense counsel's repeated assurances that this statutory issue was not being raised, a member of the Board requested that he be allowed to read into the record his analysis of the Ordinance. That analysis rejected the applicability of § 1204(M)(4) to shopping center signs. Tr. II at 3-11.
[8] Section 1204(J) regulates the size, placement and design standards of plaza signs. It provides:
 "(1) Shopping centers, research and office parks may display one (1) plaza sign.
 (2) The display board of plaza signs shall be of an integrated and uniform design.
 (3) Plaza signs for shopping centers of less than 6,400 square feet shall not exceed thirty-two (32) square feet in area for the part of the sign bearing the name of the shopping center, plus three (3) square feet in area for the name of each business. The maximum height of such signs shall be twenty (20) feet.
 (4) Plaza signs for shopping centers of 6,400 square feet or more shall not exceed the following dimension for the part of the sign bearing the name of the shopping center: five (5) square feet in area for each one thousand (1,000) gross square feet in the shopping center to a maximum of sixty (60) square feet. In addition, such plaza signs may contain three (3) square feet in area for the name of each business. The maximum height of such signs shall be thirty (30) feet.
 (5) (5) Plaza signs for research and office parks shall not exceed sixteen (16) square feet in area for the part of the sign bearing the name of the building or park, plus two (2) square feet in area for the name of each business or office." Id. at § 1204(J).
[9] Section 1204(M)(4) permits the owners of buildings that are located more than one hundred feet from the street to increase the size of their signs using a set formula.
[10] It is interesting to note that the Appellant relies upon this testimony to allege a hardship while still maintaining that it is entitled to display signs of 140 square feet as a matter of right.