JOHN H. LEE *vs.* THOMAS J. GOUGH, *Warden.*

JUNE 28, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This is a petition for a writ of habeas corpus alleging in substance that the petitioner has been held in custody and illegally deprived of his liberty by the respondent warden at the Rhode Island state prison since December 24, 1949. In the petition, which was filed August 10, 1956, the petitioner prays that this court order his discharge forthwith.

The petition is based substantially on the following facts. On August 1, 1933, following a jury trial wherein he was convicted on a charge of criminal abortion resulting in death, petitioner was sentenced to serve twenty years in the state prison. On January 30, 1945, after having served eleven years, five months and twenty-nine days of this sentence, he was released on parole, in accordance with the provisions of general laws 1938, chapter 617, as amended, by the state board of parole which issued a parole permit to him allowing him to be at liberty during the unexpired

term of his sentence, unless said permit "shall be sooner revoked or become void."

The first paragraph of the permit states in substance that petitioner, a prisoner in the Rhode Island state prison, "has been held therein upon a sentence that will expire on the twentieth day of April, 1950, and his demeanor and conduct warrant the belief that he intends to lead an orderly life * * *." The permit expressly provides that it is granted subject to certain terms and conditions, which must be faithfully observed by the prisoner to whom it is issued, and which among other things provides that he shall observe all the laws of Rhode Island and of the United States, and of every jurisdiction in which he may be; that he shall be industrious, and discreet in his conduct; and that he shall be subject to all conditions, regulations and requirements which said board of parole may impose and establish concerning him during the continuance of said permit.

The permit also contains the following pertinent provisions: "The Board of Parole may revoke this permit at any time before its expiration. The violation by the holder of this permit of any of its terms or conditions, or the violation of any laws, shall of itself make void said permit. When this permit has been revoked or has become void, as aforesaid, the Governor may issue an order authorizing the arrest of the holder of said permit and his return to the place of his original confinement. The holder of said permit, when returned to the place of his original confinement, shall be detained therein according to the terms of his original sentence; and in computing the period of his confinement the time between his release upon said permit and his return to the place of his original confinement shall not be taken to be any part of the term of his sentence."

The permit was duly signed for the board of parole by the then governor of the state and the secretary of said board. The petitioner also signed the permit directly beneath the paragraph which stated that it had been ex-

plained to him and that he fully understood its terms and conditions.

Thereafter, on July 9, 1949, while still on parole, petitioner was again arrested and charged with committing another abortion. He was released on bail. Subsequently in September 1949 he was indicted by the grand jury for abortion. On October 9, 1949 the parole board revoked his parole permit without giving him a hearing, and on December 24, 1949 he was picked up pursuant to said revocation and recommitted to the state prison where he has since been detained.

On March 17, 1950, following a jury trial and conviction on said indictment for abortion, petitioner was sentenced to "be imprisoned for and during the term of seven years from and after the expiration of a sentence" of twenty years now being served in said prison. The petitioner's exceptions in that case, indictment No. 24986, were overruled by this court in *State* v. *Lee,* 78 R. I. 46.

The instant petition also makes reference to certain proceedings filed by him in the superior court, namely, petitions for habeas corpus M. P. No. 3196 in 1952 and M. P. No. 3675 in 1955. As a result of the decision of the superior court in M. P. No. 3196, wherein it was held that under public laws 1949, chap. 2161, sec. 5, petitioner's parole could not be revoked without a hearing, the board of parole in June 1952 gave petitioner a hearing and revoked his parole, *nunc pro tunc,* effective as of October 9, 1949. Thereafter, in 1955, he filed a petition for habeas corpus M. P. No. 3675 in the superior court. After a hearing thereon the petition was denied by Mr. Justice Jalbert on the ground that under the applicable law petitioner had voided the parole permit by his breach of the conditions thereof.

The petitioner contends that the twenty-year sentence in indictment No. 16324 ended on April 20, 1950 and that the action of the board of parole in June 1952 revoking his

parole was ineffective since his sentence had already expired.

The state, on the other hand, argues that the instant petition should be denied and dismissed for the following reasons: that it is insufficient and defective; that it is in fact an appeal of the superior court's denial of habeas corpus by Mr. Justice Jalbert in M. P. No. 3675; that it is based on exactly the same grounds as set forth in *Lee* v. *Gough,* 84 R. I. 358, 124 A.2d 549; and that the grounds set forth in the instant petition were included in a previous petition which was denied by this court on February 27, 1953 in *Lee* v. *Kindelan,* 80 R. I. 212, where, at page 222, we stated: "Under no view of our statutes would that sentence *automatically* expire before August 1, 1953." Finally the state contends that the instant petition has no merit and should be denied and dismissed.

It is true that petitioner has heretofore made several unsuccessful attempts to gain his freedom through the judicial processes of our courts on substantially the same grounds alleged in the instant petition. Nevertheless in the interest of justice and in the special circumstances of this case, we shall treat the petition on the assumption that it is procedurally in good order and that it is not in fact an attempt to appeal the decision of the superior court in M. P. No. 3675 wherein a petition based on substantially the same grounds was denied and dismissed by Mr. Justice Jalbert in 1955. See G. L. 1938, chap. 584, §19.

The question remains, however, whether the grounds set forth in the instant petition and the issues raised are the same as those alleged by this petitioner in a previous petition which was denied and dismissed by this court on February 27, 1953 in *Lee* v. *Kindelan, supra.* If the instant petition is not controlled by our decision in that case, then we must determine whether there is merit in the contentions of petitioner in the instant case.

In his brief and arguments petitioner raises the following

points: "When did petitioner's 20 year sentence end? Was his parole legally revoked before his 20 years sentence expired? When does his 7 year sentence begin and when does it end? What is to be done with the Petitioner's imprisonment from December 24, 1949 to the present?" At the hearing before this court, petitioner's counsel expressly waived those portions of the instant petition which were determined in *Lee* v. *Kindelan, supra,* wherein we stated at page 222: "General laws 1938, chap. 55, §18, as amended by P. L. 1951, chap. 2746, does not authorize an automatic reduction in the time to be served under a sentence, as petitioner contends." But the petition in that case was denied and dismissed on other grounds as stated at page 223 of such opinion. We shall therefore assume that our decision in that case does not control the determination of the instant petition which we shall consequently consider on its merits.

The petitioner concedes that his twenty-year sentence did not automatically expire on April 20, 1950 without proof of compliance with the requirements of G. L. 1938, chap. 55, §18, as amended. However, he contends that the parole permit furnished this proof and consequently the twenty-year sentence expired on April 20, 1950. He further contends that the time he has spent in state prison from December 24, 1949 to July 1955 should be credited towards the seven-year sentence he was to serve after April 20, 1950 on indictment No. 24986 (1950); that consequently he has already served over five and one-half years of said sentence (December 24, 1949 to July 1955); and allowing him five days' good conduct and two days' industrial time per month for seven years, he has earned 588 days, or one year and 223 days off his seven-year sentence. On this basis he concludes that the petition should be granted and that he should be released forthwith.

In the alternative he contends that if the time served from December 24, 1949 to April 20, 1950 is not counted

against his seven-year sentence and if we hold that his seven-year sentence began on April 20, 1950, then he was entitled to be released on August 30, 1955 when he would have served his seven years less the 588 days off for good conduct and industrial time allowed under the provisions of P. L. 1951, chap. 2746.

We cannot agree with petitioner's contentions which, in our opinion, are based upon erroneous assumptions and a misconception of our parole statute, G. L. 1938, chap. 617. That chapter created the state board of parole and clothed it with certain powers. In *Lee* v. *Kindelan*, 80 R. I. 212, at page 222, in construing it this court stated: "That statute, as amended by P. L. 1946, chap. 1687, and later by P. L. 1949, chap. 2161, grants no right to a convicted prisoner to have his freedom or to end his sentence at any time short of the sentence imposed. On the contrary it authorizes the board, except in certain desginated cases, to grant *conditional* permits for liberty. *Eligibility* for a petition to the board for such conditional parole is therein provided for a prisoner who has served 'not less than one-half of the term for which he was sentenced.' In computing 'one-half of the term,' credit for time off for good behavior as specified in chap. 55, §18, *supra,* as amended, may be included. But nowhere is there any provision that the parole board must grant an applicant his liberty whenever he is eligible according to such computation; or that his sentence, if parole is granted, is thereby satisfied for all purposes."

The petitioner concedes that if his parole permit had been legally revoked, he would have to serve the balance of his original term. However, he strenuously argues that the parole could be terminated only by revocation by the board of parole before April 20, 1950. He further contends that the action of the board in 1949 was invalid for lack of a hearing and that the revocation by them in 1952 was ineffective because his sentence had already expired.

After a careful examination of the record and of the provisions of G. L. 1938, chap. 617, §5, we do not deem it necessary to determine the validity of the purported revocations by the board of parole either in 1949 or in 1952. As we view the provisions of chap. 617, *supra,* a parole permit issued thereunder can be terminated either by the action of the board or by acts of the parolee himself. A parole under our law is a contract between the state and the parolee and, under the powers granted by said statute to the board, is subject to the terms and provisions therein provided by said board.

General laws 1938, chap. 617, §5, expressly provides: "Every permit issued by the parole board under this chapter shall entitle the prisoner to whom it is issued to be at liberty upon parole during the remainder of the term which he is under sentence to serve, upon such terms and conditions as the board may see fit in its discretion to prescribe, and the acceptance of such permit by such prisoner shall constitute an agreement on the part of such prisoner to abide by and conform to such terms and conditions." The same section then sets forth the procedure to be followed in the case of a revocation by action of the board of parole.

It is our opinion that under the provisions of §5, *supra,* the board is granted sufficient authority to prescribe, in its discretion, that the parole permit is issued under the following condition: "The violation by the holder of this permit of any of its terms or conditions, or the violation of any laws, *shall of itself* make void said permit." (italics ours) Such a provision was included in the parole permit issued to petitioner which he accepted in its entirety and by the terms of which he is bound.

Under the authority granted to it by chap. 617, the board of parole also inserted in the permit the following provision: "When this permit has been revoked or has become void, as aforesaid, the Governor may issue an order authorizing the arrest of the holder of said permit and his

return to the place of his original confinement." We do not deem it necessary to determine whether the parole permit became void on the date the crime was alleged to have been committed, or on the date when petitioner was found guilty by a jury, or on March 17, 1950, the day he was sentenced to prison for a term of seven years to begin after the expiration of his twenty-year sentence. Moreover we do not believe that an order of the governor was required in the circumstances of this case, since petitioner had been in the state prison, the place of his original confinement, since December 24, 1949 and further the court's order of commitment on the seven-year sentence also resulted in his return to the place of his original confinement.

On the assumption that his parole became void on March 17, 1950, at the latest, it naturally follows under our view of the law that the parole permit was legally terminated prior to the expiration date of April 20, 1950 as set forth in the permit. Therefore, in accordance with chap. 617, *supra,* and the terms of the permit, he was required to be detained in the place of his confinement subject to the terms of his original sentence without credit for the period of time between his release upon said permit and his return to the place of such confinement.

On this state of the record it is our opinion that since he was returned to the state prison on December 24, 1949 to serve the balance of his original twenty-year sentence, namely, eight years, six months and two days, said sentence would normally expire on June 26, 1958, but if he is entitled to 1372 days off for time earned for good conduct and for work performed in prison industries his original twenty-year sentence would actually expire on September 23, 1954, which is the beginning of the seven-year sentence imposed on March 17, 1950 on indictment No. 24986.

If he is allowed such benefits, he started serving the seven-year sentence on September 23, 1954, and this sentence would normally expire on September 23, 1961. Hence

he is not entitled at this time to be discharged from further custody. However, if he has earned the benefit of the above deductions from his sentence permitted by the statute he may now be eligible to apply for parole.

The petition for a writ of habeas corpus is denied and dismissed.

FLYNN, C. J., did not participate in the decision.

*John Quattrocchi, Jr.,* for petitioner.

*William E. Powers,* Atty. Gen., *Alfred E. Motta,* Special Counsel, for State.