**STATE**

v.

**Idalio Fernandes SANTOS.**

No. 2001–516–C.A.

Supreme Court of Rhode Island.

March 16, 2005.

---

Christopher R. Bush, Esq., for Plaintiff.

Janice M. Weisfeld, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

**OPINION**

ROBINSON, Justice.

At issue in this case is whether a person convicted of sexual assault and incarcerated before July 1, 1992, but released after that date, was required to register as a sexual offender pursuant to the registration statute that was in existence at the time of the prisoner's release (*viz.*, G.L. 1956 § 11–37–16 (since repealed by P.L. 1996, ch. 108, § 3)).[1] The defendant, Idalio Fernandes Santos, maintains that, because he was convicted before § 11–37–16 went into effect, he was under no duty to register. Accordingly, he asserts that the trial court erred in denying his "Motion to Dismiss Notice of Duty to Register." The state disputes this argument and maintains that, because Santos was released after July 1, 1992, he is required to register as a sexual offender.

**Facts/Travel of the Case**

On May 9, 1990, defendant was convicted of first-degree sexual assault.[2] He was sentenced to serve a thirty-year term of imprisonment at the Adult Correctional Institutions, with fifteen of those years being suspended with probation. After serving a portion of his sentence, defendant was scheduled to be released on parole. Before his proposed release date of January 24, 2001, defendant was given notice that he had a duty to register as a sexual offender pursuant to § 11–37–16

---

1. General Laws 1956 § 11–37–16, although nominally repealed, is still effective with respect to a limited class of individuals. That is because G.L.1956 § 11–37.1–18 of the subsequently enacted registration statute contains a savings clause stating that "[n]othing in this section shall be construed to abrogate any duty to register which exists or existed under the provisions of former § 11–37–16." *See also State v. Flores*, 714 A.2d 581, 583 (R.I. 1998) (holding that, although the defendant in

that case was convicted after the effective date of the new statute, § 11–37.1–18, he nevertheless was required to register as a sex offender because § 11–37–16 was in effect at the time he was charged).

2. The facts pertaining to the underlying sexual assault conviction may be found at *State v. Santos*, 604 A.2d 780 (R.I.1992).

and § 11–37.1–18.[3] The defendant complied with the mandate implicit in that notice, but then he subsequently filed a "Motion to Dismiss Notice of Duty to Register."[4]

In the memorandum of law filed in support of his motion, defendant asserted that, by its explicit terms, § 11–37–16(a) (entitled *"Duty to register"*) imposes the registration duty only upon those who were convicted of sexual assault after July 1, 1992. Accordingly, he maintains that he is not required to register because he was convicted before that date.

The state countered that defendant is required to register pursuant to the next subsection of the statute, § 11–37–16(b) (entitled *"Notice of duty to register—Prisoner or inmate "*), because, under that subsection, sexual offenders who are released after July 1, 1992, (as Santos was) must be informed of their duty to register.

After considering the submissions of the parties, the motion justice denied defendant's motion. He based his decision on his understanding of the meaning and scope of § 11–37–16(b). He summarized his thinking as follows:

"Based upon that portion of the statute, which I'm paraphrasing, if a defendant is serving a sentence for first degree sexual assault or one of those charges requiring registration prior to their release, they must be informed they have to register.

3. Although § 11–37.1–18 was referred to in the notice, both parties agree that only the meaning and scope of § 11–37–16 is at issue in this case.

4. While this Court has previously expressed its grave reservations as to whether this matter, arising as it does in the context of a motion to dismiss in a closed criminal case, was properly before the Court, it nevertheless opted on that previous occasion to consider the case "on the assumption that it [was] procedurally in good order * * *." *State v.*

"That language, as far as I was concerned—understanding your argument, of course—that language was clear and concise. Based upon that language is the reason why I denied your motion."

The defendant appealed, and the parties appeared before this Court on May 13, 2003, to show cause why the case should not be summarily decided. Because the Court was evenly divided, the appeal was denied and dismissed. The defendant then petitioned for reargument and reconsideration before the full Court pursuant to Article I, Rule 25 of the Supreme Court Rules of Appellate Procedure. We granted the petition, and the full Court has now carefully considered the contentions of the parties and concludes that the appeal should be sustained.

## Standard of Review

■ When faced with questions of statutory interpretation, this Court approaches the matter on a *de novo* basis. *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001) ("Questions of law and statutory interpretation * * * are reviewed *de novo* by this Court."); *see also Keystone Elevator Co. v. Johnson & Wales University,* 850 A.2d 912, 918 (R.I.2004); *In re Abby D.,* 839 A.2d 1222, 1224 (R.I. 2004); *Mottola v. Cirello,* 789 A.2d 421, 423 (R.I.2002).

*Santos,* No.2001–516–C.A., at n. 1 (R.I., unpublished order, filed May 29, 2003) (quoting *Lee v. Gough,* 86 R.I. 23, 28, 133 A.2d 779, 781 (1957)). We will act in the same manner on this appeal, because such an approach appears to us to be in the interest of justice. *See id.* It is our view, however, that in the future any post-conviction challenge to a purported requirement that one register as a sexual offender should be brought as an application for post-conviction relief in the Superior Court.

## Analysis

Santos asserts that the trial justice misinterpreted the plain meaning of the language contained in the fairly complex statutory scheme that is set forth in § 11–37–16. He maintains that § 11–37–16(a) specifies the classes of individuals who have a duty to register as sexual offenders and that § 11–37–16(b) merely creates certain ministerial duties by requiring certain specified officers to inform those individuals who have a duty to register of the existence of that duty.

We begin our consideration of the pertinent statutory language with a restatement of some basic principles.

As we have often noted, "[i]t is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996); *see also Keystone Elevator Co.*, 850 A.2d at 918; *Driscoll v. Karroo Land Co.*, 600 A.2d 722, 724 (R.I.1991).[5] It is similarly well established that "when we examine an unambiguous statute, 'there is no room for statutory construction and we must apply the statute as written.'" *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998) (quoting *In re Denisewich*, 643 A.2d 1194, 1197 (R.I.1994)); *see also In re Abby D.*, 839 A.2d at 1224; *Arnold v. Rhode Island Department of Labor and Training Board of Review*, 822 A.2d 164, 168 (R.I.2003).

The plain statutory language is the best indicator of legislative intent. *Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I.2003) ("When interpreting a statute, our ultimate goal is to give effect to the General Assembly's intent. * * * The best evidence of such intent can be found in the plain language used in the statute. Thus, a clear and unambiguous statute will be literally construed."); *see also Caminetti ·v. United States*, 242 U.S. 470, 490, 37 S.Ct. ·192, 61 L.Ed. 442 (1917) ("[T]he language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent."); *Hathaway v. Hathaway*, 52 R.I. 39, 40, 156 A. 800, 801 (1931) ("'It is an elementary proposition that courts only determine, by construction, the scope and intent of a law when the law itself is ambiguous or doubtful. If a law is plain, and within the legislative power, it declares itself, and nothing is left for interpretation.'") (quoting *State v. Duggan*, 15 R.I. 403, 409, 6 A. 787, 788 (1886)).

Moreover, in approaching a statute, it is axiomatic that "this Court will not broaden statutory provisions by judicial interpretation unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute." *Simeone v. Charron*, 762 A.2d 442, 448–49 (R.I.2000).

These venerable principles of statutory interpretation have guided our approach to this case.

It is undisputed that, by virtue of an explicit savings clause (discussed in footnote 1, *supra* ), § 11–37–16 is applicable to the instant case. The most pertinent portions of § 11–37–16 provide as follows:

**5.** Of course, in abiding by the plain meaning rule, we remain mindful of the corollary principle that we "will not construe a statute to reach an absurd result." *Kaya v. Partington*, 681 A.2d 256, 261 (R.I.1996); *see also La-* *Plante v. Honda North America, Inc.*, 697 A.2d 625, 628 (R.I.1997) ("[T]his Court will adopt a construction that avoids an absurd or unjust result.").

"(a) *Duty to Register.* Any Person who since July 1, 1992, has been, or shall hereafter be, convicted of any offense in violation of this chapter, or convicted in another state of first degree sexual assault which if committed in this state would constitute a violation of this chapter, shall, within sixty (60) days after July 21, 1992, or within thirty (30) days of coming into any city or town in which the person shall reside, register with the chief of police of the city or town.

(b) *Notice of duty to register—Prisoner or inmate.* Any person who, after July 1, 1992, is discharged or paroled from a jail, prison, or other institution where he or she was confined because of the commission or attempt to commit one of the above mentioned offenses or is released from a state hospital to which he or she was committed as a mentally disordered sex offender shall, prior to discharge, parole, or release, be informed of his or her duty to register under this section by the official in charge of the place of confinement or hospital and the official shall require the person to read and sign such form as may be required by the attorney general stating that the duty of the person to register under this section has been explained to the person. The official in charge of the place of confinement or hospital shall obtain the address where the person expects to reside upon his or her discharge, parole, or release and shall report the address to the attorney general. The official in charge of the place of confinement or hospital shall give one copy of the form to the person, and shall send one copy to the attorney general and one copy to the appropriate

law enforcement agency having jurisdiction over the place the person expects to reside upon discharge, parole, or release. If the conviction which makes the person subject to this section is a felony conviction, the official in charge shall, not later than forty-five (45) days prior to the scheduled release of the person, send one copy to the appropriate law enforcement agency having local jurisdiction where the person expects to reside upon discharge, parole, or release; one copy to the prosecuting agency which prosecuted the person; and one copy to the attorney general. The official in charge of the place of confinement shall retain one copy. All such forms shall, if the conviction which makes the person subject to this section is a felony conviction, be transmitted within such times as to be received by the local law enforcement agency, and prosecuting agency thirty (30) days prior to the discharge, parole, or release of the person."

■ It seems clear to us that § 11–37–16(a) *defines the universe* of those who were, or are, under a legislatively imposed duty to register.[6] By contrast, § 11–37–16(b) does not purport to broaden or shrink the just-defined universe, but rather directs the official in charge of a jail, prison, or state hospital where a sex offender has been confined or committed to inform a person being discharged or paroled or released from one of those institutions of that person's "duty to register under this section."

The present controversy could have been averted if the drafters of the statute had inserted the words "if any" or "*vel non*" after the phrase "duty to register" in

---

**6.** That universe has been clearly defined by the General Assembly in § 11–37–16(a) as consisting of "[a]ny person *who since July 1, 1992, has been, or shall hereafter be, convicted* of any offense in violation of this chapter, or

convicted in another state of first degree sexual assault which if committed in this state would constitute a violation of this chapter * * *." (Emphasis added.)

§ 11–37–16(b). The absence of such words does not, however, render the statutory language ambiguous; the addition of such words would simply have made clear language read even more clearly. The crucial point is that § 11–37–16(b) should not be read as broadening the pool of those upon whom § 11–37–16(a) imposes a duty.[7] In short, § 11–37–16(a) imposes registration duties upon certain sexual offenders, whereas § 11–37–16(b) instructs officials to inform those offenders of their duty.[8]

The provisions of § 11–37–16(c) are consistent with our reading of the statutory scheme before us. Section 11–37–16(c) provides:

> "*Notice of duty to register—Probationer or one paying fine.* Any person who, after July 1, 1992, is convicted in this state of the commission or attempt to commit any of the above mentioned offenses and who is released on probation or discharged upon payment of a fine shall, prior to release or discharge, be informed of the duty to register under this section by the court in which

the person has been convicted and the court shall require the person to read and sign such form as may be required by the attorney general, stating that the duty of the person to register under this section has been explained to him or her."

As the state conceded at oral argument, the individuals described in § 11–37–16(c) are already encompassed within the group delineated in § 11–37–16(a). Accordingly, to accept the state's position that subsections (a), (b), (c), and (d) of § 11–37–16 define four identifiable classes of individuals upon whom a duty to register is imposed would require us to interpret subsection (c) as repeating the duty-imposition aspect of subsection (a). We are not inclined to ascribe such a repetitive purpose to the legislation. *See Kingsley v. Miller,* 120 R.I. 372, 376, 388 A.2d 357, 360 (1978) ("This court will not ascribe to the General Assembly an intent to enact legislation which is devoid of any purpose, inefficacious, or nugatory."); *see also Pullen v. State,* 707 A.2d 686, 691 (R.I.1998).

---

**7.** We note that had the General Assembly intended to impose a duty upon individuals who were convicted before July 1, 1992, but released after that date, it could easily have written the statute in that manner. In fact, it did do something of that nature with respect to juvenile offenders in § 11–37–16(d), which provided:

> "Persons discharged or paroled from the Youth Training Center—Destruction of records. (1) Any person who, after July 1, 1992, is discharged or paroled from the training school to the custody of which he or she was committed after having been adjudicated guilty of any offense under this chapter shall be subject to registration under the procedures of this section.
>
> (2) Prior to discharge or parole from the training school, all persons subject to registration shall be informed of the duty to register under the procedures set forth in this section. Training school officials shall transmit the required forms and information to the attorney general."

According to this section, a juvenile offender who is discharged after July 1, 1992, has a duty to register regardless of when he or she was convicted.

**8.** The constitutional validity of legislative attempts to require registration by offenders whose offense was committed before the legislation was enacted is not presently before us. It is not an easy issue. *See Smith v. Doe,* 538 U.S. 84, 105–06, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (holding that there is no violation of the *ex post facto* clause where the challenged sex offender registration act is determined to be nonpunitive and part of a remedial civil regulatory scheme); *see also, e.g.,* Maureen S. Hopbell, Comment, *Balancing the Protection of Children Against the Protection of Constitutional Rights: The Past, Present and Future of Megan's Law,* 42 Duq. L.Rev. 331 (2004); Note, *Making Outcasts Out of Outlaws: The Unconstitutionality of Sex Offender Registration and Criminal Alien Detention,* 117 Harv. L.Rev. 2731 (2004).

Since the unambiguous language of § 11–37–16(a) did not impose a duty upon the defendant to register as a sexual offender and since § 11–37–16(b) is not directed to offenders, but rather to officials of institutions, we conclude that the motion justice erred in holding that the defendant was required by § 11–37–16(b) to register.[9]

### Conclusion

For the reasons stated, we reverse and vacate the judgment of the Superior Court. We remand the record to the Superior Court for proceedings consistent with this opinion.

FLAHERTY, Justice, dissenting.

I respectfully dissent from the holding of the majority in this case. It is well settled that "[i]n construing a statute this [C]ourt's purpose is to establish and effectuate the legislative intent behind the enactment." *State v. Powers*, 644 A.2d 828, 830 (R.I.1994) (citing *In re Barnacle*, 623 A.2d 445, 450 (R.I.1993)). "We determine such intent 'by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning.'" *C & J Jewelry Co. v. Department of Employment and Training, Board of Review*, 702 A.2d 384, 385 (R.I.1997) (quoting *Asadoorian v. Warwick School Committee*, 691 A.2d 573, 578 (R.I.1997)). "Furthermore, 'when the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and we must give the words of the statute their plain and obvious meaning.'" *Id.* (quoting *Wayne Distributing Co. v. Rhode Island Commission for Human Rights*, 673 A.2d 457, 460 (R.I. 1996)).

I do not agree with the majority's holding that G.L.1956 § 11–37–16(a) defines the universe of persons required to register under the statute. Indeed, § 11–37–16(b) clearly states that "[a]ny person who, after July 1, 1992, is discharged or paroled from a jail, prison, or other institution * * * because of the commission * * * of the above mentioned offenses * * * shall, prior to discharge * * * be informed of his or her duty to register under this section * * *." Thus, while § 11–37–16(a) addresses those persons who are convicted after July 1, 1992, § 11–37–16(b) pertains to individuals who were released after that date, without regard to when they were convicted, referring to "any person" discharged or released on parole after July 1, 1992. Thus, we are bound to give effect to the plain and ordinary meaning of the words utilized by the Legislature imposing a duty to register on inmates released from incarceration on or after July 1, 1992, irrespective of the date of their conviction.

I also respectfully disagree with the majority's holding that § 11–37–16(b) does not broaden the pool of persons upon whom a duty of registration is imposed, but merely instructs correctional officials to inform those covered by the statute of their duty to register. Such a construction produces the "absurd result" of exempting an entire class of sex offenders from registration requirements. *State v. Flores*, 714 A.2d 581, 583 (R.I.1998) (citing *Kaya v. Partington*, 681 A.2d 256, 261 (R.I.1996)). The majority's interpretation of this statute excludes such a class of offenders, namely, those who were convicted before

---

9. We certainly do not suggest that the motion justice's approach to the statutory language was in any way arbitrary or irrational. It is just that, considering the statute in a *de novo* manner, it is our considered opinion that, as

drafted, subsection (b) of § 11–37–16 cannot be read as imposing duties on offenders in addition to those imposed by virtue of subsection (a).

the act was passed but who were released from incarceration after July 1, 1992. Since those being released after long periods of imprisonment often are the most dangerous types of sex offenders, it is inconceivable to me that the Legislature could have intended such a result.

Section 11–37–16(b) provided that any person released after July 1, 1992 "shall * * * be informed of his or her duty to register * * *." Under § 11–37–16(b), it is incumbent upon the official in charge to require the inmate to sign a form "as may be required by the [A]ttorney [G]eneral stating that the duty of the person to register * * * has been explained to the person." Furthermore, the official is required under that subsection to give one copy of the form to the inmate and one copy "to the appropriate law enforcement agency having local jurisdiction where the person expects to reside upon discharge * * *." *Id.* "All such forms shall * * * be transmitted within such times as to be received by the local law enforcement agency, and the prosecuting agency thirty (30) days prior to the discharge, parole, or release of the person." *Id.* It seems utterly implausible that the Legislature would require officers in charge to notify inmates of their duty to register and comply with specified procedures regarding notification without also requiring the notified offenders to register. Thus, to effectuate the legislative intent behind the statute's enactment, the language must be construed literally to impose an accompanying duty to register on those individuals who were informed of this duty prior to their release.

For the foregoing reasons, I would deny the defendant's appeal and affirm the judgment of the trial court. ·