A. Michael MARQUES, Director
of Department of Business
Regulation

v.

PAWTUCKET MUTUAL INSURANCE
COMPANY et al.

No. 2006–52–Appeal.

Supreme Court of Rhode Island.

Feb. 19, 2007.

Robert Fine, Providence, for Petitioner (DBR).

Robert Taylor, Providence, for Respondent (Pawtucket Mutual).

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The appellants, Rhode Island FAIR plan and Massachusetts FAIR plan (appellants or FAIR Plans),[1] appeal to this Court from a judgment approving a plan of sale for Pawtucket Mutual Insurance Company

---

1. Although neither Rhode Island FAIR plan nor Massachusetts FAIR plan was a named party to the action giving rise to this appeal, the record indicates that both entities filed objections in the Superior Court to the Petition for Instructions Regarding Deferral of Payments of FAIR Plan Liabilities filed by A. Michael Marques.

(PMIC) and its subsidiary, Narragansett Bay Insurance Company (NBIC), which plan was prepared by the insurance rehabilitator, A. Michael Marques (Marques or the Rehabilitator),[2] and which provided in part that the Rehabilitator could defer certain payments owed to the appellants.

This case came before this Court for oral argument on January 24, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the oral arguments and reviewing the legal memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth herein, we deny the appeal and affirm the judgment of the Superior Court.

**Facts and Travel**

The Rhode Island and Massachusetts FAIR Plans are funds statutorily established for the purpose of providing basic property insurance to persons who would otherwise be unable to obtain it.[3] The Rhode Island FAIR Plan was established pursuant to G.L. 1956 chapter 33 of title 27 and is administered by the Rhode Island Joint Reinsurance Association. The Massachusetts FAIR Plan, which is administered by the Massachusetts Property Insurance Underwriting Association, was established pursuant to Mass. Gen. Laws Ann. ch. 175C, § 4 (West 1998).

All licensed insurers in Rhode Island and Massachusetts are required to participate in the FAIR Plans as a condition of their license to write insurance policies.

Participation in the FAIR Plans involves payment by the licensed insurers of the amount assessed by the entity responsible for administering the respective state's FAIR Plan. The assessments are calculated on the basis of the amount of the premiums on policies the insurer has written in the preceding year. See § 27–33–6; Mass. Gen. Laws Ann. ch. 175C, § 4(e).

In accordance with their statutory authority, appellants assessed both PMIC and NBIC annually for the proportionate amounts due to the FAIR Plans. On May 1, 2003, because the condition of PMIC and NBIC was "financially hazardous to their policyholders, their creditors and/or the public," the companies were placed into rehabilitation pursuant to the Rhode Island Insurers' Rehabilitation and Liquidation Act, G.L. 1956 chapter 14.3 of title 27 (the Rehabilitation Act), by an order of the Superior Court. The order of rehabilitation allowed the Rehabilitator to take any action necessary and appropriate to reform and revitalize PMIC and NBIC.

The Rehabilitator subsequently determined that the conversion of PMIC from a mutual company to a stock company would be an appropriate way to revitalize PMIC and NBIC, by allowing the company to raise capital through the sale of stock. On August 14, 2003, the Superior Court granted the Rehabilitator the authority to convert PMIC into a stock company to be called Pawtucket Insurance Company (PIC). The Rehabilitator and his staff then focused their efforts on identifying a potential buyer of PIC as a stock company.

Thereafter, the Rehabilitator entered into an agreement with Blackstone Finan-

---

**2.** The original Rehabilitator in this case was Marilyn Shannon McConaghy. Mr. Marques was appointed as successor Rehabilitator in January of 2005. For the sake of clarity, we will refer to him as the Rehabilitator throughout this opinion.

**3.** The acronym FAIR stands for Fair Access to Insurance Requirements. See G.L. 1956 § 27–33–2.

cial Group, Inc. (Blackstone), pursuant to which Blackstone agreed to purchase PIC as a stock company and to assume all of its liabilities as of the date of the sale. The sale would enable PIC to operate as an insurance company with a new infusion of capital in the amount of $5 million. The Rehabilitator then filed a petition for instructions to make effective the previously authorized conversion, which petition was granted by the Superior Court on August 25, 2005.

On that same day, in an effort to facilitate the sale to Blackstone, the Rehabilitator filed a petition for instructions to defer PMIC and NBIC payments of FAIR plan assessments and to instead deposit the funds in a special trust.[4] Over the objection of the FAIR Plans, on September 30, 2005, the Superior Court entered orders approving the deferral of FAIR Plan payments.[5] The appellants then filed a timely notice of appeal.

### Standard of Review

■■■■ This Court reviews questions of statutory interpretation *de novo*. *Silva v. Fitzpatrick,* 913 A.2d 1060, 1063 (R.I.2007); *Park v. Rizzo Ford, Inc.,* 893 A.2d 216, 221 (R.I.2006). In conducting that review, we abide by the principle that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996); *see also State v. Santos,* 870 A.2d 1029, 1032 (R.I.2005).[6] When we are confronted with contentions as to what the General Assembly intended, we are mindful of the maxim that "[t]he plain statutory language is the best indicator of legislative intent." *Santos,* 870 A.2d at 1032; *see also Martone v. Johnston School Committee,* 824 A.2d 426, 431 (R.I.2003).

### Analysis

The appellants argue that the Superior Court erroneously interpreted the Rehabilitator's statutory authorization to take any action "deemed necessary or appropriate to reform and revitalize the insurer" as permitting acts that appellants contend are contrary to specific state law requirements, as well as to federal law. While appellants concede that the Rehabilitator has broad power to formulate and propose rehabilitation plans for Rhode Island insurance companies, they argue that there is no specific provision of the Rehabilitation Act and no other statutory authority that allows the Rehabilitator to defer payments required by state and federal law.

■■■■ It is our opinion that deferring payments from PIC to the FAIR Plans was within the broad statutory authority granted to the Rehabilitator under § 27–14.3–

---

4. According to appellants, the outstanding assessments due to the Rhode Island FAIR Plan for the years 1998, 1999, and 2000 total $80,661.22. The appellants also contend that there are additional outstanding assessments for the years 2001 through June 30, 2005, which total $53,039.76.

   With respect to the assessments due to the Massachusetts FAIR Plan, appellants contend that the amount outstanding for the years 1995 and 1996 totals $341,428.50. According to appellants, the amount outstanding for the years 1997 through June 30, 2005 totals $107,832.63.

5. The sale to Blackstone was thereafter consummated, and the insurer emerged from rehabilitation.

6. Of course, when we apply the plain meaning rule, "we remain mindful of the corollary principle that we 'will not construe a statute to reach an absurd result.'" *State v. Santos,* 870 A.2d 1029, 1032 n. 5 (R.I.2005) (quoting *Kaya v. Partington,* 681 A.2d 256, 261 (R.I. 1996)).

18(d). Pursuant to that section, "[t]he rehabilitator may take any action that he or she deems necessary or appropriate to reform and revitalize the insurer." Section 27–14.3–18(d).[7] In addition, § 27–14.3–1(c) explicitly states that the Rehabilitation Act "shall be liberally construed to effect the purpose stated in subsection (d) of this section." Moreover, subsection (d) of § 27–14.3–1 sets forth the legislative purpose; it reads, in pertinent part, as follows:

> "The purpose of this chapter is the protection of the interests of insured, claimants, creditors, and the public generally with minimum interference with the normal prerogatives of the owners and managers of insurers, through:

> "(1) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures * * *."

The appellants argue that there is a conflict between § 27–14.3–18(d), which gives the Rehabilitator the general authority to take steps necessary to revitalize an insurer, and § 27–33–6, which requires insurers to participate in the FAIR Plans. Citing G.L. 1956 § 43–3–26,[8] appellants further contend that, because the conflicting statutes cannot be reconciled, the more specific statute—which appellants assert is § 27–33–6—should prevail and the Rehabilitator should not be permitted to defer the payments required by that statute.

We are not persuaded that § 27–14.3–18(d) and § 27–33–6 are so diametrically opposed to each other as to require the former to give way to the latter. We believe that the two provisions can be harmonized without doing violence to logic or language. Section 27–33–6 requires only that insurers participate in the FAIR Plans; nowhere does it state that a deferral of the payments required for participation is impermissible. When we turn to § 27–14.3–18(d), we observe that, using clear and unmistakable language, the General Assembly has expressly conferred broad authority upon the Rehabilitator to "take *any* action that he or she deems necessary or appropriate to reform and revitalize the insurer." *Id.* (emphasis added).

In the instant case, the Rehabilitator determined that the action necessary to avoid insolvency was the deferral of payments to the FAIR Plans for a period of not greater than five years. This action did not exempt PMIC and NBIC from participation in the FAIR Plans altogether. The deferral of payments to the FAIR Plans has given effect to the purpose of the statute by preventing an otherwise imminent insolvency, thereby protecting the interests of insured parties, claimants, creditors, and the public.

We would also note that a likely alternative to deferring payments to the FAIR Plans was insolvency; and, if PMIC and NBIC were insolvent, they would be exempt from making payments to the FAIR Plans.[9] Under that scenario, appellants would receive nothing. The Rehabilitator's action in this case keeps open the real possibility that appellants will ulti-

**7.** It is not at all unprecedented for a legislature to authorize sweeping relief measures in order to cope with a critical economic situation. *See, e.g., Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 439–40, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

**8.** General Laws 1956 § 43–3–26 states:
"Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision."

**9.** *See* G.L. 1956 § 27–33–8.

mately receive payments. In addition, it furthers the goal of reforming and revitalizing the insurer. Consequently, we hold that the Rehabilitator did not exceed the scope of his authority by deferring payments to the FAIR Plans.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to the Superior Court.