DECISION
This matter is before the Court on the appeal of Daniel V. Almeida and Jeanne M. Almeida ("Appellants") from a decision of the Zoning Board of Review of the Town of Narragansett (the "Board"). The Board's decision, filed August 6, 2003, granted conditional relief from certain provisions of the Town of Narragansett Zoning Ordinance (the "Ordinance). Appellants filed a timely complaint to this Court on August 18, 2003.[1] Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
Appellants own an 11,513 square foot parcel located at 47 Dunes Road in Narragansett, Rhode Island, and further designated as Lot 612 on Tax Assessor's Plat N-S (the "property"). The property is zoned R-20 residential and is located within the Coastal Resources Overlay District. Additionally, the property is located on the waterfront and therefore enjoys an ocean view. *Page 2 
On February 20, 2003, Appellants submitted an application for a Building Permit to the Narragansett Building Official, in which they requested permission to demolish the existing one story single-family residence and construct a new single-family home in its place. Appellants proposed to construct a three-story, three-bedroom house that incorporated a cupola with a diameter of approximately twelve feet. Additionally, Appellants requested approval of the installation of an Individual Sewage Disposal System ("ISDS") in order to replace the cesspool that had previously been used on the property.
The Building Official rejected Appellants' application on March 10, 2003. According to the Building Official, the project required a special use permit because the property is located in the Coastal Resources Overlay District. The Building Official also indicated that Appellants' proposed structure did not comply with all of the Ordinance's dimensional regulations and would therefore require dimensional relief prior to the allowance of any construction.[2] Specifically, the proposed height of the cupola — approximately forty-one and one-half feet — exceeded the zoning district's maximum height restriction of thirty-five feet. See Ordinance § 6.4.
Appellants filed an application for the required special use permit on March 12, 2003. Appellants also sought a variance from the Ordinance's dimensional regulations. After conducting an initial review of the application, the Narragansett Planning Board determined that a variance was unnecessary as the proposed structure complied with all of the Ordinance's dimensional regulations. The Planning Board indicated that the structure meets all of the Ordinance's setback requirements, while the cupola is exempt from the Ordinance's height restrictions.See Ordinance § 7.6(d) ("[t]he maximum building height limitations of this *Page 3 
ordinance shall not apply to . . . cupolas . . ."). Consequently, the Planning Board found Appellants' proposal to be in conformance with the Comprehensive Plan of Narragansett and recommended that the Board conditionally approve the special use permit.[3]
The Board held a public hearing to consider Appellant's application for a special use permit on June 12, 2003. Because the Planning Board had determined that the additional height of the proposed cupola is exempt from the Ordinance's height restrictions, Appellants did not apply for any dimensional variances. Thus, the Board's hearing was only for the limited purpose of considering Appellants' application for a special use permit.
Appellants presented two expert witnesses who testified on behalf of their application. Mr. Joseph Frisela, who had prepared a site development plan for the proposed house as well as the ISDS, was the first to appear before the Board. Mr. Frisela told the Board that the Rhode Island Department of Environmental Management ("DEM") has approved an ISDS known as Advantax, which utilizes a "bottomless sand filter that removes all the pathogens and effluent," and provides highly effective treatment of wastewater. According to Mr. Frisela, the Advantax system is much more effective than the cesspool already in use on the property, and will therefore constitute a significant improvement over the existing situation. Mr. Frisela stated that the proposed construction would have no impact on the property's drainage, and that appropriate erosion control techniques would be utilized. He also testified that the project would not affect public access to the water, that it would not have an adverse impact on any other shoreline features, and that no filling or grading would be required.
The project's architect, Ms. Laura Krekorian, also appeared before the Board and described the proposed home as a three-story, three-bedroom dwelling with a cupola that is "about ten feet across." Ms. Krekorian did not dispute a Board member's assertion that the *Page 4 
proposed height of the cupola is approximately forty-one and one-half feet, compared to the thirty-five foot overall height of the main structure. According to Ms. Krekorian, the cupola is required to reach this height so as to be in proportion with the main structure's roof and to accommodate the wrap-around windows incorporated into the cupola's design. Ms. Krekorian stated that she designed the cupola to be as small as possible. Although Ms. Krekorian believed that she may be able to lower the height "a little bit," such an adjustment would not result in a significant height reduction.
Several neighbors also appeared to voice their objections to the project. One issue of concern to the surrounding neighbors was the possibility that the ISDS could fail and contaminate the water. Responding to questioning, Mr. Frisela stated that the DEM had already taken such concerns into account in formulating its rules and regulations. Mr. Frisela first pointed out that the "state-of-the-art" Advantax ISDS would be replacing a cesspool, which he characterized as the "wors[t] type of system that is available for disposal of effluent." He also stated that DEM not only observes the installation of the ISDS to ensure that it is "put together in strict accordance with the plans," it also requires the owners to file a maintenance agreement with the town that binds all future owners of the property. Mr. Frisela concluded by stating that out of all the potential methods that could be used to dispose of effluent, the Advantax system has "proven to be the least offensive to the environment." Mr. Frisela's testimony apparently laid the neighbors' concerns about the project's possible environmental impact to rest.
The other objections centered on the height of the proposed home, with significant attention paid to the cupola. Ms. Judith Hey and Ms. Anne Marie Silveira both generally opposed the overall size and height of the structure. Ms. Hey stated that the proposed house "looks like a very large house for the small lot," while Ms. Silveira believed that it is *Page 5 
"inconsiderate for them [Appellants] to take the view away from people who have an ocean view." Ms. Nina Paliotta and Ms. Deidre Ayala both specifically objected to the height of the cupola. Mr. John Rizzo also testified that his property is located directly behind that of Appellants. Mr. Rizzo stated that he was concerned that the proposed design would "wipe out a big chunk" of his ocean view and produce a "detrimental impact" on his property.
In response to these objections, the Board reiterated that Appellants had not applied for a height variance. Appellants' counsel stated that the Ordinance exempts various "architectural features" from its overall height restrictions. Mr. Donald Goodrich, the Board's Chairman, agreed, stating that the Ordinance permits structures to include appurtenances that exceed a zoning district's height limits. Mr. Goodrich stated that the Board had no control over the height of the cupola and that the most the Board could do was to "gently suggest that good fences make good neighbors and low cupolas make better neighbors."
The Board rendered a decision on July 10, 2003, and provided notice to Appellants through a letter dated July 22, 2003, and filed July 23, 2003. Thereafter, the Board amended its initial written decision on August 5, 2003, and filed the amended decision on August 6, 2003. The amended decision indicates that the Board voted to grant Appellants' request for a special use permit, along with certain conditions. The first enumerated condition states that "the applicant must remove the cupola." Appellants timely appealed the imposition of this condition on August 18, 2003.[4]
 Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the *Page 6 
power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." Section 45-24-69(d). This Court may reverse or modify the zoning board's decision "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. Rhode Island State Labor RelationsBoard, 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); see alsoMauricio v. Zoning Board of Review of the City of Pawtucket,590 A.2d 879, 880 (R.I. 1991). When a question of statutory interpretation is presented, an appellate court conducts its review of that issue de novo.Tanner v. Town Council, 880 A.2d 784, 791 (R.I. 2005).
As to this Court's review of a zoning board's factual findings, "in reviewing a decision of a zoning board of review, the trial justice `must examine the whole record to determine whether the findings of the zoning board were supported by substantial evidence.'" Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981) (quoting Toohey v. Kilday, 415 A.2d 732, 735 (R.I. 1980)) (other quotations omitted) (emphasis added). Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to "more than a scintilla but less than a preponderance." Id. In short, a *Page 7 
reviewing court may not substitute its judgment for that of the board's if it "can conscientiously find that the board's decision was supported by substantial evidence in the whole record." Mill Realty Assocs. v.Crowe, 841 A.2d 668, 672 (R.I. 2004) (quoting Apostolou v.Genovesi, 120 R.I. 501, 509, 388 A.2d 821, 825 (1978)).
 Analysis
While the parties have each raised several arguments in support of their respective positions, the Court finds that the resolution of this case is properly determined by referring to the plain language of the Ordinance. "It is a well-settled principle in this jurisdiction that the rules of statutory construction apply equally to the construction of an ordinance." Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981) (citing Town of Warren v. Frost, 111 R.I. 217, 222, 301 A.2d 572, 573 (1973); Nunes v. Town of Bristol, 102 R.I. 729, 737, 232 A.2d 775, 780 (1967)). Therefore, in construing the provisions of the Ordinance, the Court shall be guided by long-standing rules of statutory construction.
When interpreting a statute or ordinance, the reviewing court must "first attempt to see whether or not the statute in question has a plain meaning and is therefore unambiguous." Chambers v. Ormiston,935 A.2d 956, 960 (R.I. 2007). If a statute is not ambiguous the court is to "simply apply that plain meaning to the case at hand." Id. Otherwise stated, "when the language of a statute is clear and unambiguous, [the reviewing court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." State v.Santos, 870 A.2d 1029, 1032 (R.I. 2005) (quoting Accent Stone Design,Inc. v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). Thus, when a court examines an unambiguous statute, there is "no room for statutory construction and [the court] must apply the statute as written." Id. (quoting State v. DiCicco, 707 A.2d 251, 253 (R.I. 1998) (further citations omitted)). *Page 8 
Turning to the instant matter, a reading of the Ordinance reveals that it does in fact regulate the height of structures within the Town of Narragansett. Specifically, Ordinance § 6.4 sets a maximum main structure height of thirty-five feet in all residential zones. The Ordinance further provides that "[t]he maximum building heights of this ordinance shall not apply to church spires, flagpoles, chimneys, smokestacks, cupolas, small towers (less than 144 square feet in area), water tanks, and solar energy collectors." Ordinance § 7.6(d) (emphasis added).
The Court finds that the relevant Ordinance provisions are clear and unambiguous. Therefore, the Court shall give the words contained therein their plain and ordinary meanings without further resorting to the rules of statutory construction. After reading the plain language found in Ordinance §§ 6.4 and 7.6(d), the Court finds that the height of Appellant's house — the proposed "main structure" — may not exceed thirty-five feet. However, the height of the cupola may exceed thirty-five feet, as cupolas are explicitly exempted from the height requirements found in Ordinance § 6.4. In other words, Appellants have the right to build a house that is thirty-five feet tall, and the right to construct a cupola with a height greater than thirty-five feet.[5]
Having determined the meaning of the relevant Ordinance provisions, the Court shall next consider whether the Board acted in accordance with the Ordinance when it imposed the challenged condition on Appellants.
It is well-settled in Rhode Island that "the authority of zoning boards of review is limited in scope to that expressly conferred by statute." Franco v. Wheelock, 750 A.2d 957, 960 (2000) (citingNoonan v. Zoning Board of Review of Barrington, 90 R.I. 466,159 A.2d 606 (1960)). Our Supreme Court has stated that a zoning board of review is "bound by the plain provisions of the [zoning] ordinance and any attempt to amend it is clearly beyond the powers expressly *Page 9 
delegated to the board. Any such change can be brought about only by the body authorized to enact and amend the ordinance, namely," the Town Council of Narragansett. Arc-Lan Co., Inc. v. Zoning Board of Review ofthe Town of North Providence, 106 R.I. 474, 476, 261 A.2d 280, 282
(1970) (quoting Matteson v. Zoning Board of Review, 79 R.I. 121, 123,84 A.2d 611, 612 (1951)). Therefore, the Supreme Court held "that a zoning board of review may not, either directly or indirectly, act so as to, in effect, amend the provisions of a zoning ordinance and that it is without authority to nullify the pertinent provisions of the instant ordinance." Arc-Lan Co., Inc., 106 R.I. at 477, 261 A.2d at 282.
Here, the Board required Appellants to remove the cupola from their design based upon the testimony of objecting neighbors who thought that the cupola's proposed height was excessive. The Board imposed this condition despite the fact that the Ordinance provided Appellants the clear legal right to construct a cupola with a height greater than thirty-five feet. Ordinance § 7.6(d). The Board's decision forbidding construction of the cupola effectively nullified the language of Ordinance § 7.6(d) exempting cupolas from the Ordinance's other height restrictions. Therefore, the Court finds that the Board acted in excess of its statutory authority in direct contravention of § 45-24-69(d)(1).
The Board has argued that requiring Appellants to remove the cupola constitutes an appropriate use of its authority to impose conditions on special use permits pursuant to § 45-24-43[6] The Court finds this contention unconvincing. While the Board's argument may have had some force had the Board merely required a reduction of the cupola's height, that is not what occurred in the instant case. Instead, the Board mandated the complete removal of the cupola. *Page 10 
Simply put, although § 45-24-43 provides the Board with the authority to impose certain conditions on the grant of a special use permit, the Board's authority to impose appropriate conditions is not so extensive as to allow it to nullify the clear provisions of the Ordinance.
 Conclusion
After examining the entire record, the Court finds that the Board's requirement that Appellants "remove the cupola" from the design of their proposed home was in excess of its statutory authority, as it effectively nullified a provision of the Ordinance. The Court also finds that, to the extent that the Board claimed the authority to impose the challenged condition, the Board's decision has been affected by an error of law. Substantial rights of the Appellants have been prejudiced.
For all of the foregoing reasons, the Board's requirement that Appellants "must remove the cupola" is reversed. This matter is hereby remanded to the Board for issuance of the special use permit without such condition.
Counsel for Appellants shall submit an appropriate order for entry in accordance with this Decision on or before March 5, 2008.
[1] For reasons that do not appear in the record, Appellants did not file a brief with this Court until July 2, 2007. However, the Board has not objected to the nearly four year gap between Appellants' filing of their complaint and their brief, nor does it appear that the Board has been prejudiced by the delay.
[2] The Building Official also stated that, prior to being entitled to a building permit, Appellants had to receive Bonnet Shores Fire District Approval, the project's final plans must show that the structure would be able to withstand one hundred and twenty mile per hour winds, and that the plan must conform with the Ordinance in all other respects. None of these issues are currently before the Court.
[3] None of the conditions recommended by the Planning Board are at issue in this appeal.
[4] In its Memorandum of Law, the Board informs the Court that Appellants have constructed their new home — without the cupola — and have been utilizing the property as a seasonal residence.
[5] The Court notes that the Board has not argued — nor is there any evidence in the record to show — that Appellants' cupola is properly classified as part of the dwelling's main structure.
[6] That section provides that, "[i]n granting a variance or in making any determination upon which it is required to pass after a public hearing under a zoning ordinance, the zoning board of review or other zoning enforcement agency may apply the special conditions that may, in the opinion of the board or agency, be required to promote the intent and purposes of the comprehensive plan and the zoning ordinance of the city or town." Section 45-24-43.